LEAH MILLER, INDIVIDUALLY AND D/B/A PARAGON PLUS, AND PATRICIA KELLAR, PLAINTIFFS v. TWO STATE CONSTRUCTION COMPANY, INC., RICK BANKS, LA QUINTA, INC., HARRISON ROWLAND, AND BRIAN WOODLING, DEFENDANTS

No. 9417SC666

(Filed 4 April 1995)

**Arbitration and Award § 4 (NCI4th)— arbitration not invalidated by N.C.G.S. § 22B-10—arbitration not waived**

N.C.G.S. § 22B-10 did not invalidate arbitration in this case, since an agreement to arbitrate is not an unenforceable contract requiring waiver of a jury; furthermore, defendants did not waive arbitration, since there was no showing of prejudice to plaintiffs by defendants' delay in demanding arbitration. N.C.G.S. § 1-567.2.

**Am Jur 2d, Arbitration and Award §§ 20 et seq.**

Appeal by defendants from order entered in open court 14 April 1994 and dated 15 April 1994 by Judge William Z. Wood, Jr. in Surry County Superior Court granting plaintiffs' motion for a preliminary injunction and staying arbitration. Heard in the Court of Appeals 23 February 1995.

*Gordon & Nesbit, P.L.L.C., by Thomas L. Nesbit, for plaintiffs-appellees.*

*Bennett & Blancato, L.L.P., by Richard V. Bennett and Sherry R. Dawson, for defendants-appellants.*

**MILLER v. TWO STATE CONSTRUCTION CO.**

[118 N.C. App. 412 (1995)]

JOHNSON, Judge.

The pleadings reveal the following: plaintiffs, Ms. Miller (d/b/a Paragon Plus) and Ms. Kellar, are two young women who run a small painting subcontracting firm. In September 1993, Ms. Miller, the proprietor of the firm, executed a contract with defendant Two State to paint three separate La Quinta Inns as part of La Quinta's "Reimaging" project. Two State was the general contractor for the three inns identified in the painting contract. Plaintiffs were the only female subcontractors on the project. Throughout their work, plaintiffs were subject to rude, disparate treatment, i.e., Two State's employees made lewd remarks regarding them, to the effect that they had traded sexual favors to obtain the contracts; and Two State's employees "grabbed" the women's buttocks, and "spanked" them with project notebooks. In general, plaintiffs were treated as inferior to the male contractors.

Additionally, a dispute as to the scope of the work had arisen. The contract documents called for the paint in most areas of the inns to be applied "full coverage, single coat" [or "one coat"]. In compliance with this language, Ms. Miller had her painters apply a full, but single, coat of paint to the appropriate areas. The result did not suit the owner, and the painters were instructed to apply a second coat. This additional work almost doubled the amount of work that the painters had to perform, but Two State refused to concede that it owed plaintiffs for the additional work. Two State did not execute a change order for the extra work, as the contract Two State drafted required.

Furthermore, as the work progressed, Two State ceased making progress payments and began trying to run Ms. Miller and Ms. Kellar off the project. Two State wanted to keep the "men" painters. This conduct further led to Two State's employees seizing the business property of Ms. Miller, and seizing the personal property of both plaintiffs. Additionally, Two State reported Ms. Miller to the Charlotte police for stealing a sprayer. Two State took the police to the women's hotel room, and publicly accused them of larceny. After talking with plaintiffs, the police told the Two State employees to leave the premises without the sprayer.

Plaintiffs filed suit in the General Court of Justice on 2 March 1994. In their complaint they sought damages for breach of contract, quantum meruit, bad faith, unfair trade practices, slander, conversion, battery and punitive damages. Two State reacted by filing its own demand for arbitration on 22 March 1994 with the American

Arbitration Association in accordance with Article 8 of the contract. Two State did not seek to stay plaintiffs' action. Plaintiffs moved to stay Two State's demand for arbitration.

Judge William Z. Wood, Jr. entered an order granting plaintiffs' motion for a preliminary injunction prohibiting arbitration and staying all further arbitration proceedings in the case. Judge Wood concluded that the building construction contract between the parties was an enforceable contract providing for binding arbitration of all claims, disputes or other matters in question arising out of or relating to the contract. Judge Wood concluded that the arbitration provision "is unconscionable and unenforceable under N.C.G.S. § 22B-10." Judge Wood further concluded that the arbitration provision in the contract violated Article I § 18 of the North Carolina Constitution as well as Article I § 25 of the North Carolina Constitution. From this order, defendants appeal.

This appeal by defendants is from an order staying arbitration; as such, it is an interlocutory appeal. An "order denying arbitration, although interlocutory, is immediately appealable because it involves a substantial right which might be lost if appeal is delayed." *Bennish v. N.C. Dance Theater*, 108 N.C. App. 42, 44, 422 S.E.2d 335, 336 (1992) (*quoting Prime South Homes v. Byrd*, 102 N.C. App. 255, 258, 401 S.E.2d 822, 825 (1991). North Carolina General Statutes §§ 1-277(a) (1983) and 7A-27(d)(1) (1989). Defendants argue that North Carolina General Statutes § 22B-10 (1994) does not invalidate Article 8 of the contract between the parties which requires that all claims, disputes or other matters in question arising out of or relating to the contract be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. Defendants further argue that the arbitration provision of the contract between the parties does not violate Article I, § 18 nor § 25 of the North Carolina Constitution.

North Carolina General Statutes § 22B-10, which became effective 1 October 1993, provides:

Any provision in a contract requiring a party to the contract to waive his right to a jury trial is unconscionable as a matter of law and the provision shall be unenforceable. *This section does not prohibit parties from entering into agreements to arbitrate or engage in other forms of alternative dispute resolution.* (Emphasis added.)

In the instant case, the parties entered into an agreement which provided:

> All claims, disputes and other matters in questions arising out of, or relating to, this Subcontract or the breach thereof shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon in accordance with applicable law in any court having jurisdiction thereof.

This agreement was enforceable under North Carolina General Statutes § 1-567.2 (1983) which states:

> (a) Two or more parties may agree in writing to submit to arbitration any controversy existing between them at the time of the agreement, or they may include in a written contract a provision for the settlement by arbitration of any controversy thereafter arising between them relating to such contract or the failure or refusal to perform the whole or any part thereof. Such agreement or provision shall be valid, enforceable, and irrevocable except with the consent of all the parties, without regard to the justiciable character of the controversy.

The parties to the contract in the instant case agreed to submit any disputes for arbitration. Accordingly, an agreement to arbitrate exists. Plaintiffs argue that enforcing an agreement to arbitrate limits access to the courts. This argument is without merit. Once an agreement to arbitrate is found, courts should compel arbitration on a party's motion and then "step back and take a 'hands-off' attitude during the arbitration proceeding. The trial court then reenters the dispute arena to confirm, modify, deny or vacate the arbiter's award." *Henderson v. Herman*, 104 N.C. App. 482, 486, 409 S.E.2d 739, 741 (1991), *disc. review denied*, 330 N.C. 851, 413 S.E.2d 551 (1992). This Court in *Henderson* further stated:

> An agreement to arbitrate does not cut off a party's access to the courts. On the contrary, an action compelled to arbitration must have the arbiter's decision confirmed by the court. . . . The ACT [Uniform Arbitration Act, Article 45, North Carolina General Statutes §§ 1-567.1 through 1-567.20] provides parties with a means to bypass the morass of judicial litigation, while still main-

taining the judicial doors ajar for recalcitrant disputes. Hence, it would appear that the legislature intended the courts to send certain predetermined issues to arbitration and then to step back until the arbitration proceeding is complete.

*Id.* at 485, 409 S.E.2d at 741.

North Carolina has a strong public policy favoring arbitration of disputes between parties. *Servomation Corp. v. Hickory Construction. Co.*, 316 N.C. 543, 342 S.E.2d 853 (1986); *Cyclone Roofing Co. v. LaFave Co.*, 312 N.C. 224, 321 S.E.2d 872 (1984). "Our strong public policy requires that the courts resolve any doubts concerning the scope of arbitrable issues in favor of arbitration." *Johnston County v. R.N. Rouse & Co.*, 331 N.C. 88, 91, 414 S.E.2d 30, 32 (1992). Additionally, there is no legislative bar to arbitrating claims which are based on tortious conduct or unfair and deceptive trade practices and claims for punitive damages as long as they arise out of or relate to a contract that provides for arbitration or its breach. *Rodgers Builders v. McQueen*, 76 N.C. App. 16, 331 S.E.2d 726 (1985), *disc. review denied*, 315 N.C. 590, 341 S.E.2d 29 (1986). Thus, the claims are subject to arbitration regardless of whether they are characterized as a tort or contract action. *Id.*

An agreement to arbitrate a dispute is not an unenforceable contract requiring waiver of a jury; thus, the trial court erred in concluding that because the arbitration provision did not provide for trial of facts by a jury that it was unconscionable and unenforceable under North Carolina General Statutes § 22B-10, and in violation of Article I §§ 18 and 25 of the North Carolina Constitution.

Although our Courts have not explicitly said that arbitration violates the North Carolina Constitution in that it deprives parties of their right to a trial by jury, this Court in *Bentley v. N.C. Insurance Guaranty Assn.*, 107 N.C. 1, 418 S.E.2d 705 (1992) discussed and found persuasive the reasoning in a Delaware Supreme Court case concerning the constitutionality of a mandatory binding arbitration clause in an automobile insurance policy. In *Bentley*, an insurance policy had an appraisal clause upon which disputes were to be subject. *Bentley*, quoting the Supreme Court of Delaware, stated:

In arguing against enforcement of the arbitration clause, [plaintiffs] attempt to appeal to "the old judicial hostility to arbitration." . . . Over time . . . the judicial view of arbitration has evolved from hostility to eager acceptance. In part, the change has been

fostered by a recognition of the efficiency and specialized expertise available in an arbitral forum. . . .

. . . In short, the public policy of this state favors the resolution of disputes through arbitration.

*Bentley*, 107 N.C. at 10-11, 418 S.E.2d at 710 (*quoting Graham v. State Farm Mut. Automobile Ins. Co.*, 565 A.2d 908, 910-11 (1989) and *Kulukundis Shipping Co. v. Amtorg Trading Corp.*, 126 F.2d 978, 985 (2d Cir. 1942)). This Court in *Bentley* went on to say that plaintiff's right to a trial by jury was not abridged by the appraisal clause under the North Carolina Constitution. Thus, there is no constitutional impediment to arbitration agreements.

Plaintiffs next argue that defendants waived arbitration. Plaintiffs base their waiver claims on the fact that defendants withheld payments, seized plaintiffs' property, barred plaintiffs from the project, and sought to have them arrested. In addition, plaintiffs say that defendants' delay in seeking arbitration should act as a waiver, and that defendants should be estopped from enforcing the provision.

Our Supreme Court in *Cyclone Roofing Co. v. Lafave Co.* stated:

Waiver of a contractual right to arbitration is a question of fact. Because of the strong public policy in North Carolina favoring arbitration, courts must closely scrutinize any allegation of waiver of such a favored right. ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.") Because of the reluctance to find waiver, we hold that a party has impliedly waived its contractual right to arbitration if by its delay or by actions it takes which are inconsistent with arbitration, another party to the contract is prejudiced by the order compelling arbitration. (Citations and footnote omitted.)

312 N.C. at 229, 321 S.E.2d at 876. The Court went on to say that prejudice may result if a party has to bear the expenses of a lengthy trial; evidence which may be helpful to the party is lost because of delay in seeking of arbitration; a party's opponent seeks an advantage of judicial discovery procedures which are not available in arbitration; or because of delay, the party takes steps in litigation to its detriment or expended significant amounts of money. *Id.* In the instant case, prejudice has not been shown. Defendants did not file an answer to plain-

tiffs' complaint, until after they made a demand for arbitration and opposed plaintiffs' motion to stay arbitration. Thus, plaintiffs have failed to establish that defendants waived arbitration in accordance with the contract.

Because we hold that North Carolina General Statutes § 22B-10 does not invalidate arbitration in the instant case, we need not address the other issues raised by defendants. The agreement in the instant case is a valid written agreement to arbitrate disputes according to North Carolina General Statutes § 1-567.2. Thus, the trial court erred in staying arbitration. The decision is reversed and remanded.

Reversed and remanded.

Judges JOHN and MARTIN, MARK D. concur.