RED SPRINGS PRESBYTERIAN CHURCH, Plaintiff v. TERMINIX COMPANY OF NORTH CAROLINA, INC., and FRANKLIN D. KELLETT, Defendants

No. COA94-810

(Filed 20 June 1995)

### 1. Arbitration and Award § 3 (NCI4th)— arbitration provision—validity

There was no merit to plaintiff's contention that an arbitration provision was void because it was not independently negotiated since the parties, as evidenced by their signatures on a termite contract, agreed to submit any disputes for arbitration and thus had a valid agreement to arbitrate.

**Am Jur 2d, Alternative Dispute Resolution § 70-73.**

### 2. Arbitration and Award § 47 (NCI4th)— termite contract—fraud—unfair and deceptive trade practice—failure to order arbitration—error

The parties' agreement to arbitrate was valid and enforceable for all claims of relief alleged in plaintiff's complaint, and the trial court erred in failing to order arbitration of plaintiff's claims for fraud and unfair and deceptive trade practices arising out of its termite treatment agreement with defendant.

**Am Jur 2d, Alternative Dispute Resolution § 52.**

Appeals by defendant and plaintiff from order entered 15 June 1994 by Judge Joe Freeman Britt in Robeson County Superior Court. Heard in the Court of Appeals 19 April 1995.

*J. Gates Harris, and Lee and Lee, by W. Osborne Lee, Jr., for plaintiff-appellant/appellee.*

*Russ, Worth, Cheatwood & Guthrie, by Walker Y. Worth, Jr., for defendants-appellants/appellees.*

JOHNSON, Judge.

The facts are as follows: Plaintiff is a church. Defendant Company is in the termite and pest control business. Defendant Franklin D. Kellett was an employee of defendant company.

In March 1984, the sanctuary and educational buildings of plaintiff church were severely damaged by tornados. During the next two

years, the buildings were restored and renovated. When the restoration and renovation was substantially completed, defendants, acting under the license of defendant Kellett, treated the sanctuary for termite infestation. At the time of this treatment, the parties signed a contract entitled "Termite Protection Plan." Plaintiff paid for the termite treatment and for the annual fees set out in the termite contract.

In the Spring of 1993, plaintiff discovered termite damage to the flooring of the vestibule, the flooring of the library, and to the stained glass windows on the south side of the sanctuary. Defendants have not made any repairs to these areas alleged to be damaged.

In April 1994, plaintiff filed this action. Plaintiff alleged in its complaint: (1) inadequate and unworkmanlike termite treatment; (2) inadequate and unworkmanlike annual inspections occurring after the original treatment; (3) failure to repair plaintiff's building as required by the contract; (4) fraud for contractually waiving "minimum" termite treatment requirements; (5) unfair and deceptive trade practices; and (6) failure "to seek in good faith a resolution" of plaintiff's claim which is alleged to constitute an unfair and deceptive trade practice. The fraud and unfair and deceptive trade practice claims concern, in part, the waivers contained in the Termite Contract. In the Termite Contract prepared by defendants, plaintiff had waived ten of the minimum requirements for treatment required by the North Carolina Structural Pest Control Committee. Plaintiff contends that by waiving these minimum standards, it was substantially certain that termites would later actively infest the sanctuary; that defendants knew this; that plaintiff did not know the importance of these waivers; that defendants knew that plaintiff did not know the importance of these waivers; that defendants had a duty to disclose this information to plaintiff; and that this failure to disclose was done fraudulently.

Plaintiff also contends that defendants have fraudulently attempted to avoid their legal responsibility for the termite damage.

The Termite Contract also provided that:

It is agreed between Purchaser and Terminix that any controversy or dispute arising between them relating to: (1) any treatment or service rendered by or allegedly required to be rendered by Terminix, or (2) any damage or injury to person or to property, whether direct, incidental, or consequential, allegedly caused by Terminix, or (3) the enforcement of or any claim under the "GUARANTY AND EXCLUSIONS" provisions hereof, shall be settled and resolved exclusively by arbitration. It is further agreed the said

RED SPRINGS PRESBYTERIAN CHURCH v. TERMINIX CO.

[119 N.C. App. 299 (1995)]

arbitration shall be controlled by and conducted under the provisions of the North Carolina Uniform Arbitration Act, North Carolina General Statutes 1-567.1 through 1-567.20, as said statutes may be amended or replaced from time to time, and said North Carolina statutes are hereby incorporated into this Contract by reference as if fully set forth herein. It is further agreed that there shall be a total of three (3) arbitrators, one to be chosen by Purchaser, one by Terminix, and a third by the first two arbitrators. It is also agreed that the arbitrators shall render their written award or decision within thirty days after the conclusion of the arbitration hearing.

Defendants filed a motion to dismiss based upon this contractual provision requiring arbitration of disputes or claims arising between the parties. At the hearing on this motion, with the consent of plaintiffs, defendants amended their motion to seek the enforcement of the arbitration provision of the Termite Contract.

On 15 June 1994, the trial court partially allowed defendants' motion and ordered arbitration and a stay of litigation as to plaintiff's first, second, and third claims for relief, but denied the motion as to plaintiff's fourth, fifth and sixth claims for relief.

On 29 June 1994, defendants filed and served notice of appeal from that portion of the trial court's order denying arbitration in part, and on 5 July 1994, plaintiff appealed from that portion of the order allowing arbitration in part.

Because the parties are appealing from an order which denies in part and stays in part arbitration of plaintiff's claims against defendants, the appeal is interlocutory. The portion of the order denying arbitration is immediately appealable because a substantial right is involved. *See Miller v. Two State Const. Co., Inc.*, 118 N.C. App. 412, 455 S.E.2d 678 (1995). However, an order compelling arbitration does not affect a substantial right; consequently, it is not immediately appealable. *See N.C. Electric Membership Corp. v. Duke Power Co.*, 95 N.C. App. 123, 381 S.E.2d 896, *disc. review denied*, 325 N.C. 709, 388 S.E.2d 461 (1989); *The Bluffs v. Wysocki*, 68 N.C. App. 284, 314 S.E.2d 291 (1984).

[1] Plaintiff contends that the arbitration provision is void because it was not independently negotiated. Plaintiff cites *Blow v. Shaughnessy*, 68 N.C. App. 1, 313 S.E.2d 868, *disc. review denied*, 311 N.C. 751, 321 S.E.2d 127 (1984) and *Routh v. Snap-On Tools Corp.*,

108 N.C. App. 268, 423 S.E.2d 791 (1992) in support of this proposition. The language used in these cases is not controlling in the instant case. The cases relied upon by plaintiff are distinguishable. In both cases there was a question as to whether a valid agreement existed since proper signatures were not available. In *Routh*, the party objecting to arbitration had failed to sign the contract where his signature was required. It was on that basis that this Court noted that the plaintiff had not agreed to the arbitration clause in the agreement. In *Blow v. Shaughnessy*, plaintiffs did not sign the Limited Partnership Agreement, nor the customer agreements that existed between the defendants; thus, this Court ruled that no valid agreement existed. Prior to a contract being valid, a mutual agreement must exist between the parties as to the contract. *Id.* In the instant case, unlike *Blow v. Shaughnessy* and *Routh*, an agreement existed. Therefore, plaintiff's argument is without merit.

North Carolina General Statutes § 1-567.2 (1983) states:

(a) Two or more parties may agree in writing to submit to arbitration any controversy existing between them at the time of the agreement, or they may include in a written contract a provision for the settlement by arbitration of any controversy thereafter arising between them relating to such contract or the failure or refusal to perform the whole or any part thereof. Such agreement or provision shall be valid, enforceable, and irrevocable except with the consent of all the parties, without regard to the justiciable character of the controversy.

Where the contract's language is clear and unambiguous, the court is required to interpret the contract as written. *Routh*, 108 N.C. App. 268, 423 S.E.2d 791. In the instant case, the language is clear and unambiguous. The parties in the instant case as evidenced by their signatures on the Termite Contract agreed to submit any disputes for arbitration. Thus, a valid agreement to arbitrate exists.

Plaintiff also argues that it was fraudulently induced to execute the Termite Contract with defendant Company. Plaintiff's allegations, however, fail to sufficiently allege the elements of fraud. There is no allegation of misrepresentation or concealment of any "subsisting or ascertainable fact." *Ragsdale v. Kennedy*, 286 N.C. 130, 139, 209 S.E.2d 494, 500 (1974). Further, plaintiff does not argue that the alleged misrepresentation induced its execution of the contract, nor does it allege that the arbitration clause was invalid.

**[2]** Defendants cross-appeal arguing that the trial court erred by failing to grant defendants' motion to compel arbitration of plaintiff's fourth, fifth, and sixth claims for relief and for a stay of litigation with respect to the pending award.

Defendants contend that the agreement to arbitrate is valid and enforceable for all claims of relief alleged in plaintiff's complaint. Our Court in *Rodgers Builders v. McQueen*, 76 N.C. App. 16, 331 S.E.2d 726 (1985), *disc. review denied*, 315 N.C. 590, 341 S.E.2d 29 (1986) stated that claims seeking punitive damages, claims for fraud in the inducement, unfair and deceptive trade practices, and negligent misrepresentation were subject to arbitration under the provisions of a written contract between the parties so long as they arise out of or relate to a contract which provides for breach. Thus, the claims that the trial court declined to stay for arbitration would come under the auspices of arbitrable claims.

North Carolina has a strong public policy favoring arbitration. *Servomation Corp. v. Hickory Construction Co.*, 316 N.C. 543, 342 S.E.2d 853 (1986); *Cyclone Roofing Co. v. LaFave Co.*, 312 N.C. 224, 321 S.E.2d 872 (1984). Additionally, no public policy exists which would preclude arbitration of termite treatment disputes. Therefore, the trial court erred in failing to order arbitration of all claims. For the foregoing reasons, the decision of the trial court is affirmed regarding that portion of the order allowing arbitration, and reversed regarding that portion of the trial court's order denying arbitration.

Affirmed in part and reversed in part and remanded in order for the trial court to order the remaining claims to arbitration.

Judges COZORT and McGEE concur.