CARTERET COUNTY v. UNITED CONTRACTORS OF KINSTON, INC.

No. 943SC396

(Filed 3 October 1995)

**1. Arbitration and Award § 23 (NCI4th); Counties § 52 (NCI4th)— power of county to enter into arbitration agreement**

Though counties have not been given the express power to enter into arbitration agreements, they do have the power to enter into contracts, and, since the General Assembly has recognized the validity of contractual arbitration agreements, it is therefore necessarily or fairly implied under Dillon's Rule that counties may enter into arbitration agreements incident to their

power to contract. Furthermore, our courts have upheld the validity of arbitration agreements in controversies involving counties. N.C.G.S. § 1-567.2.

**Am Jur 2d, Alternative Dispute Resolution §§ 8, 9, 70, 101, 106; Municipal Corporations, Counties, and Other Political Subdivisions §§ 118, 196, 493-504.**

2. **Arbitration and Award § 4 (NCI4th)— arbitration clause— no conflict with right to jury trial**

The arbitration clause in question was not invalid on the ground it conflicted with plaintiff's constitutional right to a jury trial, since an agreement to arbitrate a dispute is not an unenforceable contract requiring waiver of a jury; there is no constitutional impediment to arbitration agreements; and plaintiff never demanded a jury trial and did not assign this as error.

**Am Jur 2d, Alternative Dispute Resolution §§ 25, 65.**

**Constitutionality of arbitration statutes. 55ALR2d 432.**

3. **Arbitration and Award § 2 (NCI4th)—language clear and unambiguous—document signed by both parties—arbitration provision valid**

There was no merit to plaintiff's contention that an arbitration provision in the parties' contract was void because it was not independently negotiated, since the contract language was clear and unambiguous, both parties properly signed the document, and the parties thereby reached a valid agreement to arbitrate.

**Am Jur 2d, Alternative Dispute Resolution §§ 70-74.**

4. **Arbitration and Award § 19 (NCI4th)— timeliness of filing arbitration claims—no prejudice to plaintiff—no waiver of contractual right to arbitrate**

Regardless of whether defendant's claims for arbitration were timely filed, because of this state's strong public policy in favor of arbitration and because no prejudice to plaintiff was shown, defendant did not waive its contractual right to arbitration.

**Am Jur 2d, Alternative Dispute Resolution §§ 117, 119, 131.**

**5. Arbitration and Award § 10 (NCI4th)— arbitrators with same occupation as defendant—no fundamental unfairness—specific allegations of partiality not proved**

There was no merit to plaintiff's contention that an arbitration award should be vacated because an arbitration panel consisting of three contractors was fundamentally unfair, since the only link between the arbitrators and defendant was that they had the same occupation, and partiality was not shown by the panel's failure to take an oath before the proceedings began, by its award of $700,000 in damages, by the arbitrators' refusal to clarify their award or by the dissent of one of the arbitrators from the award. Furthermore, plaintiff failed to show bias on the part of the chairman of the arbitration panel because of his prior business relationship with one of defendant's witnesses where the relationship was disclosed and no one objected.

**Am Jur 2d, Alternative Dispute Resolution §§ 157-161.**

**Disqualification of arbitrator by court or stay of arbitration proceedings prior to award, on ground of interest, bias, prejudice, collusion, or fraud of arbitrators. 65 ALR2d 755.**

**Setting aside arbitration award on ground of interest or bias of arbitrators. 56 ALR3d 697.**

**6. Arbitration and Award § 23 (NCI4th)— increased overhead expenses—issue arising out of contract—power of arbitrators to rule on question**

Whether plaintiff would be entitled to increased overhead expenses due to extension of the contract completion date was an issue arising out of the contract and fell within the scope of the arbitration agreement; therefore, since the arbitrators had the power to rule on the issue, even if they erroneously considered evidence of increased overhead expenses it would not be ground to vacate the award.

**Am Jur 2d, Alternative Dispute Resolution §§ 163-166, 169.**

**7. Arbitration and Award § 33 (NCI4th)— inclusion of improper damages in award—speculation**

Because the arbitrators did not clarify their award, plaintiff's contention that the award impermissibly included consequential

and punitive damages was speculation, but even if the award did contain such damages, it would not provide grounds for vacating the award.

**Am Jur 2d, Alternative Dispute Resolution §§ 193, 205, 256.**

**Arbitrator's power to award punitive damages. 83 ALR3d 1037.**

**Sufficiency of showing of actual damages to support award of punitive damages—modern cases. 40 ALR4th 11.**

Appeal by plaintiff from judgment entered 9 December 1993 by Judge James R. Strickland in Carteret County Superior Court. Heard in the Court of Appeals 13 January 1995.

Plaintiff Carteret County and defendant United Contractors of Kinston, Inc. entered into a contract in June 1991 whereby defendant agreed to construct a new Department of Social Services (DDS) building and renovate the old DSS building in Beaufort, North Carolina. Problems arose over various change orders issued by plaintiff during the construction. In response, defendant delivered its own change order on 24 August 1992 demanding an extension of the completion date and an increase in the contract price. Plaintiff refused to honor the change order and defendant filed for arbitration under the contract on 4 September 1992. Plaintiff filed an answer and a counterclaim against defendant.

Plaintiff formally terminated defendant from the project on 4 November 1992, and defendant amended its arbitration claim to include damages for wrongful termination. Plaintiff filed this suit against defendant on 21 April 1993 seeking to stay the arbitration proceedings. A temporary restraining order granting the stay was issued that day in an *ex parte* proceeding. The order was dissolved on 26 April 1993 and the arbitration hearings began the next day.

A panel of three arbitrators heard the case, and in June 1993 issued a decision in favor of the defendant in the amount of $700,000 plus a share of the costs, with one arbitrator dissenting as to the amount of damages. Defendant moved for entry of judgment in Carteret County Superior Court on 12 August 1993. Plaintiff moved to vacate, modify, and clarify the award on 9 September 1993. After a hearing on 14 September 1993, the trial court deferred a ruling on confirmation of the award pending a clarification by the arbitrators.

The arbitrators refused to clarify their decision. The court then entered judgment confirming the award for defendant on 10 December 1993. From this judgment, plaintiff appeals.

*Wheatly, Wheatly, Nobles & Weeks, P.A., by Stephen M. Valentine, and Poyner & Spruill, by Donald R. Teeter, for plaintiff-appellant.*

*Erwin & Bernhardt, by Fenton T. Erwin, Jr., for defendant-appellee.*

McGEE, Judge.

Plaintiff brings forth eighteen assignments of error, which it groups into six questions presented. These questions can be divided into three areas: 1) whether defendant had a right to arbitrate its claims against plaintiff; 2) whether the arbitration award should be vacated because of the alleged partiality of the arbitrators; and 3) whether the arbitrators' alleged consideration of improper issues is grounds for vacating the award. For the reasons stated below, we affirm the judgment of the trial court confirming the arbitration award in favor of defendant.

## I. Right to Arbitrate

Plaintiff argues the trial court should have vacated the arbitration award because defendant was not entitled to arbitration of its claims against plaintiff. We disagree.

## A. Validity

[1] Plaintiff first alleges the arbitration clause is invalid because a county does not have the power to enter into a binding arbitration agreement. The well-settled rule in this State governing the permissible scope of municipal or county actions, commonly called Dillon's Rule, is set out in *White v. Union County*, 93 N.C. App. 148, 377 S.E.2d 93 (1989). The rule states:

"[A] municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes of the corporation . . . ."

*White*, 93 N.C. App. at 151, 377 S.E.2d at 95 (quoting *Greene v. City of Winston-Salem*, 287 N.C. 66, 72, 213 S.E.2d 231, 235 (1975). Counties have been given the express power to enter into contracts with private entities under N.C. Gen. Stat. § 153A-449 (1991). Further, our General Assembly has recognized and authorized contractual provisions providing for arbitration of controversies arising under a contract. N.C. Gen. Stat. § 1-567.2 (1983).

While it is true counties have not been given the express power to enter into arbitration agreements, they do have the power to enter into contracts. Since the General Assembly has recognized the validity of contractual arbitration agreements, it is therefore "necessarily or fairly implied" under Dillon's Rule that counties may enter into arbitration agreements incident to their power to contract.

Our courts have also upheld the validity of arbitration agreements in controversies involving counties. In *Johnston County v. R.N. Rouse & Co.*, 331 N.C. 88, 414 S.E.2d 30 (1992), our Supreme Court held a consent to jurisdiction clause requiring the parties to submit to the jurisdiction of North Carolina courts did not conflict with a general arbitration clause, and therefore the county was bound to arbitrate the dispute. This Court upheld an arbitration award in favor of a county where the county had sought arbitration under the terms of its contract with plaintiff in *Ruffin Woody and Associates v. Person County*, 92 N.C. App. 129, 374 S.E.2d 165 (1988), *disc. review denied*, 324 N.C. 337, 378 S.E.2d 799 (1989). As these cases demonstrate, North Carolina counties have the power to enter into contractual arbitration agreements.

[2] Plaintiff next argues the arbitration clause is invalid because it conflicts with plaintiff's constitutional right to a jury trial. This argument is without merit. "An agreement to arbitrate a dispute is not an unenforceable contract requiring waiver of a jury . . . ," *Miller v. Two State Construction Co.*, 118 N.C. App. 412, 416, 455 S.E.2d 678, 681 (1995), and there is no constitutional impediment to arbitration agreements. *Id.* at 417, 455 S.E.2d at 681. Also, plaintiff never demanded a jury trial and did not assign this as error. Participation in arbitration proceedings without making any protest or demand for a jury trial waives any right to later object to the arbitration award on these grounds. *McNeal v. Black*, 61 N.C. App. 305, 307, 300 S.E.2d 575, 577 (1983). Therefore, this argument fails.

[3] Plaintiff next contends the arbitration provision is void because it was not independently negotiated, and cites *Routh v. Snap-On*

*Tools Corp.*, 108 N.C. App. 268, 423 S.E.2d 791 (1992) for this proposition. However, plaintiff's reliance on *Routh* is misplaced.

In *Red Springs Presbyterian Church v. Terminix Co.*, 119 N.C. App. 299, 458 S.E.2d 270 (1995), the plaintiff also argued an arbitration agreement was void because it was not independently negotiated. This Court distinguished *Routh*,' holding that the basis of the *Routh* decision was the lack of a valid agreement as evidenced by the failure of the plaintiff to properly sign the contract, and therefore the *Routh* language was not controlling. *Red Springs*, 119 N.C. App. at 301-302, 458 S.E.2d at 272-73. The *Red Springs* decision held that where the contract language is clear and unambiguous, and the parties by evidence of their proper signing of the contract have agreed to the arbitration provision, then a valid agreement to arbitrate exists. *Red Springs*, 119 N.C. App. at 302, 458 S.E.2d at 273.

In this case, the arbitration language contained in the contract is clear and unambiguous. The arbitration provision itself contains seven sections and comprises almost a full page of the contract document. We find no merit to plaintiff's argument that "there is no indication the parties to the contract even knew [the arbitration provision] was in the contract." It is reasonable to expect that a building contractor and a body politic frequently involved in capital construction know the contents of a standard AIA construction contract. Because the contract language is clear and both parties properly signed the document, the parties reached a valid agreement to arbitrate. The arbitration provision is valid and enforceable by the defendant.

### B. Waiver of Right to Arbitrate

[4] Plaintiff argues defendant waived the right to arbitration by failing to fulfill certain contractual conditions precedent to filing an arbitration demand. Specifically, plaintiff contends defendant failed to file its claims within twenty-one days after the events giving rise to the claims as called for by the contract. However, even if defendant did not timely file its claims, under the facts of this case defendant was still entitled to arbitration.

North Carolina has a strong public policy in favor of arbitration, and any allegation of waiver of such a favored right will be closely scrutinized. *Cyclone Roofing Co. v. LaFave Co.*, 312 N.C. 224, 229, 321 S.E.2d 872, 876 (1984). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the

problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* (quoting *Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 74 L. Ed. 2d. 765, 785 (1983)). Before a party will be found to have impliedly waived a contractual right to arbitration, that party must have, by its delay or actions inconsistent with arbitration, caused another party to be prejudiced by an order compelling arbitration. *Cyclone Roofing*, 312 N.C. at 229, 321 S.E.2d at 876.

In this case, nothing in the record indicates plaintiff was prejudiced by defendant's alleged delay in filing its claims, and plaintiff makes no such argument. We also note the trial court found the claims were timely filed. Regardless of whether the claims were timely filed, because of the strong public policy in favor of arbitration and because no prejudice to plaintiff has been shown, we find defendant did not waive its contractual right to arbitration.

## II. Alleged Partiality of Arbitrators

**[5]** Plaintiff argues the arbitration award should be vacated because an arbitration panel consisting of three contractors was "fundamentally unfair" and because the chairman of the panel was "biased" against the plaintiff. We find no merit to these contentions.

The court shall vacate an arbitration award upon application of a party if "[t]here was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party." N.C. Gen Stat. § 1-567.13(a)(2) (1983). Other grounds for vacating an award under N.C. Gen. Stat. § 1-567.13(a) include:

(1) The award was procured by corruption, fraud or other undue means; . . .

(3) The arbitrators exceeded their powers;

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary [to statute] as to prejudice substantially the rights of a party; or

(5) There was no arbitration agreement and the issue was not adversely determined in proceedings under G.S. 1-567.3 and the party did not participate in the arbitration hearing without raising the objection . . . .

G.S. 1-567.13(a)(1), (3)-(5). A party seeking to set aside an arbitration award has the burden of demonstrating an objective basis to support its allegations of an arbitrator's improper conduct. *Thomas v. Howard*, 51 N.C. App. 350, 353, 276 S.E.2d 743, 745 (1981). Plaintiff did not meet this burden.

Plaintiff first contends an arbitration panel consisting unanimously of contractors is inherently unfair, and cites *Bennish v. N.C. Dance Theater*, 108 N.C. App. 42, 422 S.E.2d 335 (1992). In *Bennish*, this Court held an arbitration panel where two of the three arbitrators were directly tied to the defendant was inherently unfair. *Bennish*, 108 N.C. App. at 45-46, 422 S.E.2d at 337. *Bennish* is distinguishable from this case in that there are no direct ties between the arbitrators and the defendant. In *Bennish*, the two arbitrators in question were a staff member and a trustee of the defendant corporation. Here, the only link between the arbitrators and the defendant is that they have the same occupation. To accept plaintiff's argument that this is inherently unfair would be like accepting an argument that three judges cannot impartially decide a matter involving an attorney because they are members of the same profession. Plaintiff's "inherent unfairness" argument fails.

As specific evidence of impartiality, plaintiff cites the following: 1) the panel's failure to take an oath before the proceedings; 2) the panel's award of damages "far in excess of the damages the defendant was able to establish"; 3) the arbitrators refusal to clarify their award even after the trial court ordered them to do so; 4) the chairman of the arbitration panel's prior business relationship with one of the defendant's witnesses; and 5) one of the arbitrators' dissent from the award. These allegations do not amount to an objective basis for showing evident partiality as required under G.S. 1-567.13 and by the *Thomas* decision.

As plaintiff admits in its brief, the arbitrators were under no duty to take an oath. The arbitrators requested the administration of an oath be dispensed with unless either party objected, and there was no objection. As to the excessive damages claim, defendant presented evidence alleging more than $1.3 million in damages. Whether or not defendant was able to establish such damages was for the arbitration panel to decide. Plaintiff's dissatisfaction with the amount awarded is not objective evidence pointing to partiality by the arbitrators. Also, plaintiff's argument that the arbitrators did not clarify their award has no merit. "Arbitrators have no obligation to the court to give their rea-

sons for an award." *United Steelworkers v. Enterprise Corp.*, 363 U.S. 593, 598, 4 L. Ed. 2d 1424, 1428 (1960). Our Supreme Court has said:

> Arbitrators are no more bound to go into particulars and assign reasons for their award than a jury is for its verdict. The duty is best discharged by a simple announcement of the result of their investigation.

> They are not bound to decide according to law when acting within the scope of their authority, being the chosen judges of the parties and a law unto themselves, but may award according to their notion of justice and without assigning any reason.

*Bryson v. Higdon*, 222 N.C. 17, 19-20, 21 S.E.2d 836, 837 (1942).

We also find no merit to plaintiff's contention the award should be vacated because of an alleged bias on the part of Cleve Paul, the chairman of the arbitration panel. Plaintiff bases its argument on the fact the chairman admitted having a prior business relationship with one of the defendant's witnesses. However, this alone does not show bias. Further, even if the chairman was biased, plaintiff waived its right to object on this ground.

The chairman fully informed both parties of his prior relationship with the witness. After stating that he would give no more credibility to that witness' testimony than any other witness, the transcript shows the following exchange:

[Mr. Paul]:      We discussed this in the back, and I just wanted to make that known for the record. I think both parties have agreed that they don't see a problem with that. Is that correct?

[Plaintiff's
Attorney]:        Yes. I believe you indicated to us that your association with those people would not affect how you evaluated this case or how you evaluated their testimony?

[Mr. Paul]:      No.

[Plaintiff's
Attorney]:        That's good enough for us. We talked to our client.

There is no indication in the record that the chairman was biased in any way by his prior association with the witness. Further, the chairman also indicated he had prior business relationships with several of

plaintiff's witnesses. Finally, even if the chairman's relationship with the witness prevented him from being impartial, in light of the above exchange plaintiff cannot be heard to complain. "[T]he disability of an arbitrator is waived if the complaining party had prior knowledge of it." *Thomas v. Howard*, 51 N.C. App. 350, 354, 276 S.E.2d 743, 746 (1981). Not only did plaintiff have knowledge of the alleged disability, its counsel for the arbitration proceedings also acknowledged plaintiff believed the chairman could be impartial.

We fail to see how the fact that one of the arbitrators dissented from the award shows plaintiff did not receive a fair, impartial hearing. Plaintiff seems to argue that because of the dissent, but for the alleged bias of the chairman, it would have won at arbitration. However, as stated above, plaintiff presents no objective evidence of partiality by the chairman, and even if it had, it waived its right to object on this ground. Therefore, plaintiff is not entitled to have the award vacated because of partiality.

We note that plaintiff also asked this Court to modify the award based on the "fundamental unfairness" of the panel's makeup. As stated above, a panel consisting of three contractors was not fundamentally unfair. Further, such allegations are not proper grounds for modification under N.C. Gen. Stat. § 1-567.14 (1983).

### III. Consideration of Improper Issues

**[6]** Plaintiff argues the arbitrators erred by considering improper issues and testimony and by awarding consequential and punitive damages, and therefore the award should be vacated. Again, we find no merit to these arguments.

Plaintiff contends the arbitrators improperly considered evidence of defendant's increased overhead due to the project's extension of time. Plaintiff argues the contract did not allow recovery for increased overhead and that it was error to hear evidence and consider this issue and therefore the award should be vacated. However, errors of law or fact or erroneous decisions of matters submitted to arbitration are not sufficient to invalidate an arbitration award fairly and honestly made. *Fashion Exhibitors v. Gunter*, 41 N.C. App. 407, 411, 255 S.E.2d 414, 417-18 (1979). If the dispute is within the scope of the arbitration agreement, then the court must confirm the award unless one of the statutory grounds for vacating or modifying the award exists. *FCR Greensboro, Inc. v. C & M Investments*, 119 N.C App. 575, 577, 459 S.E.2d 292, 294 (1995).

In this case, the arbitration agreement reads: "Any controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration . . . ." This Court, in *Rogers Builders v. McQueen*, 76 N.C. App. 16, 331 S.E.2d 726 (1985), held a similar arbitration provision to be sufficiently broad to include all claims arising out of or related to the contract or its breach. Here, whether defendant would be entitled to increased overhead expenses due to the extension of the contract completion date is an issue arising out of the contract and falls within the scope of the arbitration agreement. Since the arbitrators had the power to rule on the issue, even if they erroneously considered evidence of increased overhead expenses it would not be ground to vacate the award.

[7] Lastly, plaintiff argues the arbitration award impermissibly included consequential and punitive damages, which it contends are not recoverable. However, we need not determine whether such damages would be recoverable in this case. Because the arbitrators did not clarify their award, plaintiff's contention that the award contains impermissible consequential and punitive damages is speculation. Even if the award did contain such damages, it would not provide grounds for vacating the award. "[T]he fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award." N.C. Gen. Stat. § 1-567.13(a)(5) (1983). *accord, Turner v. Nicholson Properties, Inc.*, 80 N.C. App. 208, 341 S.E.2d 42, *disc. review denied*, 317 N.C. 714, 347 S.E.2d 457 (1986). If the courts were to invalidate awards based upon errors of law, it would "[open the] door for coming into court in almost every case; for in nine cases out of ten some mistake either of law or fact may be suggested by the dissatisfied party. Thus . . . arbitration, instead of ending would tend to increase litigation." *Fashion Exhibiters*, 41 N.C. App. at 415, 255 S.E.2d at 420 (quoting *Poe & Sons, Inc. v. University*, 248 N.C. 617, 625, 104 S.E.2d 189, 195 (1958)).

Plaintiff has failed to produce objective evidence that the arbitrators were partial, or any other grounds to vacate the arbitration award. Plaintiff argues it would be unfair to the county and its residents to allow a large damage award to stand under these circumstances. However, arbitration is intended to be a final settlement of disputes without litigation. Parties agreeing to abide by a decision of a panel of arbitrators will not be heard to attack the fairness of such an award. *Thomas*, 51 N.C. App. at 352, 276 S.E.2d at 745.

The defendant did not brief or argue its two assignments of error and its third and fourth cross assignments of error. Therefore, these are deemed abandoned pursuant to N.C.R. App. P. 28(a). Because of our holding, we need not discuss defendant's remaining cross assignments of error. For the reasons stated above, we affirm the judgment confirming the arbitration award.

Affirmed.

Judges LEWIS and WYNN concur.