IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-557

No. COA21-781

Filed 16 August 2022

Buncombe County, No. 19 CVS 1433

R.E.M. CONSTRUCTION, INC., Plaintiff,

v.

CLEVELAND CONSTRUCTION, INC.; MHG ASHEVILLE TR, LLC; ASHEVILLE ARRAS RESIDENCES, LLC; AND FEDERAL INSURANCE COMPANY; Defendants,

and

UNITED STATES SURETY COMPANY, Intervenor.

Appeal by defendant Cleveland Construction, Inc., from judgment and order entered 10 September 2021 by Judge Alan Z. Thornburg in Buncombe County Superior Court. Heard in the Court of Appeals 24 May 2022.

*Erwin, Capitano & Moss, P.A., by Fenton T. Erwin, Jr., and Erin C. Huegel, for plaintiff-appellee R.E.M. Construction, Inc.*

*Chamberlain Hrdlicka White Williams & Aughtry, by Seth R. Price, pro hac vice, and Hamilton Stephens Steele + Martin, PLLC, by Tracy T. James and Carmela E. Mastrianni, for defendant-appellant Cleveland Construction, Inc.*

*Everett Gaskins Hancock LLP, by James M. Hash, and Thompson Law Group, LLC, by Kelley Herrin, pro hac vice, for intervenor-appellee.*

ZACHARY, Judge.

¶ 1    Defendant Cleveland Construction, Inc., ("CCI") appeals from the trial court's judgment and order (1) granting the motion of Plaintiff R.E.M. Construction, Inc., ("REM") to confirm the arbitration panel's award, and (2) denying CCI's motion to modify or, in the alternative, to partially vacate the panel's award. After careful consideration, we affirm.

## *Background*

¶ 2    This appeal arises out of an arbitration proceeding following CCI's termination of REM from a construction project in Asheville. CCI's appeal presents a narrow question of law concerning the arbitration panel's award of damages to REM. On appeal, CCI does not challenge the panel's conclusions that (1) CCI did not properly terminate REM for default under the terms of the parties' subcontracts, and (2) REM was "entitled to monetary compensation from CCI[.]" Instead, CCI argues that the panel exceeded its authority by awarding damages that were not permissible under the express terms of the parties' subcontracts, and that the trial court thus erred by confirming the panel's award. As CCI does not contest the panel's conclusions regarding the merits of REM's claims, we recite only those facts pertinent to the present dispute concerning the award of damages.

¶ 3    On 29 August 2017, CCI entered into a pair of substantially identical subcontracts ("the Subcontracts") with REM for work on the "exterior envelope" of a nineteen-story building in Asheville. Intervenor United States Surety Company

("USSC") issued performance bonds dated 25 January 2018 for both of the Subcontracts. REM began work in November 2017, but between May and September 2018 the project suffered several problems and resultant delays. On 5 October 2018, CCI terminated REM for default and notified USSC of the termination.

¶ 4 On 3 April 2019, REM filed suit against Defendants CCI, MHG Asheville TR, LLC, and Asheville Arras Residences, LLC in Buncombe County Superior Court.[1] CCI elected to arbitrate REM's claims pursuant to the terms of the Subcontracts, each of which provides in pertinent part that "[a]ny controversy or claim of . . . [REM] against [CCI] shall, at the option of [CCI], be resolved by arbitration pursuant to the Construction Industry Arbitration Rules of the American Arbitration Association in effect on the date on which the demand for arbitration is made." Accordingly, on 3 May 2019, CCI filed a motion to stay pending arbitration alongside its motion to dismiss. On 26 June 2019, the trial court entered an order staying proceedings pending the arbitration.

¶ 5 A panel of arbitrators confirmed by the American Arbitration Association ("AAA") and approved by the parties heard this matter. On 15 March 2021, the panel issued its award, determining in pertinent part "that CCI did not properly terminate

---

[1] On 26 June 2019, the trial court entered an order allowing Plaintiff to amend its complaint to bring claims against additional Defendant Federal Insurance Company. Defendants MHG Asheville TR, LLC, Asheville Arras Residences, LLC, and Federal Insurance Company are not involved in the present appeal.

REM for default; . . . and REM shall be entitled to monetary compensation from CCI in accordance with the terms of" the Subcontracts. To calculate the amount of the damage award, the panel first looked to the terms of the Subcontracts:

> 73. As stated above, the termination for default by [CCI] against REM was improper. In a case of an improper termination, the contract provides in Article 31.8 as follows:
>
>> "If after termination it is determined that, for any reason, [REM] was not in default or that [REM] is not properly terminated for default, then such termination shall have been deemed to be for the convenience of [CCI] and [REM] shall be entitled to the *actual direct cost* of all Subcontract Work satisfactorily performed and materials furnished prior to notification of termination. [REM] shall not be entitled to compensation for profit and overhead. [REM] shall not be entitled to compensation for work not performed or materials not furnished. [REM] shall *not be entitled to recover exemplary, special or consequential damages, or anticipated profit* on account of such termination or on account of [CCI's] breach of the subcontract agreement."

(Emphases added.)

¶ 6      The panel then reviewed the record, but found insufficient evidence on which to base a calculation of the "actual direct cost" to which REM was entitled under the Subcontracts. As such, the panel determined that it would fashion an equitable remedy pursuant to the AAA rules:

74. The contractual starting point for determining the damages or compensation for REM is the actual direct cost of all Subcontract Work prior to October 5, 2018. The problem is that there is no evidence of "actual direct cost" of all work. There was little evidence of the job costs of REM presented to the Panel.

75. It is unfair to deny any compensation to REM as a result of the improper termination of its subcontracts with [CCI]. Therefore, the Panel develops an equitable remedy pursuant to the AAA Rules. Specifically, Rule R-48 (a) of the Construction Industry Rules of the AAA states, "The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, equitable relief and specific performance of a contract."

Therefore, the panel set out to estimate REM's "actual direct cost" under Article 31.8 of the Subcontracts. The panel examined the evidence in the record to determine "the amount of the contract funds earned by REM at the time of termination." The panel identified a document provided by CCI as "the best source for contract funds earned by REM through September 30, 2018" and calculated a total of $211,151.00 in earnings for that period. Then, recognizing that this amount "d[id] not include the work of REM performed from October 1-5, 2018[,]" the panel determined that "the labor and equipment, including demobilization for October 1-5, 2018, is $25,000.00." Ultimately, the panel concluded that "REM is entitled to a total of $236,151.00 for contract work performed on this project." The panel added $926.00 for technical violations of the North Carolina Prompt Pay Act to its total award, and

ordered that CCI pay the administrative costs and fees of arbitration as well as prejudgment interest; the panel rejected REM's other claims for additional payment and compensation.

¶ 8 Upon request from CCI, the panel entered a modified award on 30 April 2021, correcting a computation in the amount of prejudgment interest. Although CCI also "complain[ed] about the [p]anel's reliance" on the document that the panel used to calculate REM's actual direct cost when determining the damage award, the panel declined to otherwise modify its award.

¶ 9 The parties then returned to the trial court, where they filed a series of motions. On 10 May 2021, REM filed a motion to confirm the award. On 24 May 2021, USSC filed a motion to intervene and to modify the award. On 1 June 2021, CCI filed motions to lift the stay and to modify or, alternatively, to partially vacate the award. The matter came on for hearing on 12 July 2021 in Buncombe County Superior Court. On 10 September 2021, the trial court entered its judgment and order, in which it: (1) lifted the stay; (2) allowed USSC to intervene; (3) denied CCI's motion to modify or, alternatively, partially vacate the award; (4) granted REM's motion to confirm the award; and (5) entered judgment confirming the award. CCI timely filed notice of appeal.

## *Discussion*

¶ 10 As stated above, CCI does not challenge the merits of the panel's conclusions

that (1) CCI did not properly terminate REM for default under the terms of the Subcontracts, and (2) REM was "entitled to monetary compensation[.]" Further, CCI notes that it does not contest the award of costs and fees of arbitration and has already reimbursed REM for that amount.

Instead, CCI argues that the trial court erred by denying its motion to modify or, alternatively, to partially vacate the award because the panel "improperly applied Rule 48 of the AAA Construction Industry Rules . . . to award [REM] money to which it was not entitled." Alternatively, CCI argues that the trial court should have vacated the panel's award "because the panel manifestly disregarded the law." We disagree.

## I. Standard of Review

"Since this appeal arises from a decision on a motion to confirm an arbitration award, we first note that a strong policy supports upholding arbitration awards." *WMS, Inc. v. Weaver*, 166 N.C. App. 352, 357, 602 S.E.2d 706, 709 (citation and internal quotation marks omitted), *disc. review denied*, 359 N.C. 197, 608 S.E.2d 330 (2004). "Judicial review of an arbitration award is confined to a determination of whether there exists one of the specific grounds for vacation of an award" under the Revised Uniform Arbitration Act, N.C. Gen. Stat. § 1-569.1 *et seq.* (2021). *Dalenko v. Peden Gen. Contr'rs, Inc.*, 197 N.C. App. 115, 125, 676 S.E.2d 625, 632 (2009) (citation omitted), *notice of appeal dismissed*, 363 N.C. 801, 690 S.E.2d 534, *cert. denied*, 363

N.C. 854, 694 S.E.2d 202 (2010).

¶ 13　　　　"[E]rrors of law or fact or erroneous decisions of matters submitted to arbitration are not sufficient to invalidate an arbitration award fairly and honestly made." *Carteret Cty. v. United Contr'rs of Kinston, Inc.*, 120 N.C. App. 336, 346, 462 S.E.2d 816, 823 (1995), *petition for disc. review withdrawn*, 343 N.C. 121, 471 S.E.2d 65 (1996).

> An award is intended to settle the matter in controversy, and thus save the expense of litigation. If a mistake be a sufficient ground for setting aside an award, it opens the door for coming into court in almost every case; for in nine cases out of ten some mistake either of law or fact may be suggested by the dissatisfied party. Thus[,] arbitration instead of ending would tend to increase litigation.

*Cyclone Roofing Co. v. David M. LaFave Co.*, 312 N.C. 224, 236, 321 S.E.2d 872, 880 (1984) (citation omitted). Accordingly, "[i]f the dispute is within the scope of the arbitration agreement, then the court must confirm the award unless one of the statutory grounds for vacating or modifying the award exists." *United Contr'rs*, 120 N.C. App. at 346, 462 S.E.2d at 823.

## II. Analysis

¶ 14　　　　CCI argues that the trial court should have vacated the panel's award of damages under N.C. Gen. Stat. § 1-569.23(a)(4), which provides that a trial court may vacate an arbitration award where "[a]n arbitrator exceeded the arbitrator's powers[.]" N.C. Gen. Stat. § 1-569.23(a)(4). CCI contends that the panel "exceeded its

authority by electing to fashion an award outside of what was contemplated in the negotiated contract" when it applied AAA Rule 48 to "develop[ ] an equitable remedy" where there was "no evidence of 'actual direct cost' of all work" in the record before the panel.

¶ 15        In light of the strong public policy that "supports upholding arbitration awards[,]" *Weaver*, 166 N.C. App. at 357, 602 S.E.2d at 709 (citation omitted), this Court has recognized with regard to the award of remedies that "an arbitrator does not exceed his powers if (1) state law allows the remedy for the specified cause of action, and (2) the arbitration contract does not unequivocally preclude it[,]" *id.* at 359, 602 S.E.2d at 711.[2] In the present case, state law unquestionably allows for the equitable remedy fashioned by the panel. *See* N.C. Gen. Stat. § 1-569.21(c) ("[A]n arbitrator may order any remedies the arbitrator considers just and appropriate under the circumstances of the arbitration proceeding. The fact that a remedy could not or would not be granted by the court is not a ground for . . . vacating an award under G.S. 1-569.23."). Thus, the issue presented here is whether the Subcontracts "unequivocally preclude[d]" the panel's award. *Weaver*, 166 N.C. App. at 359, 602 S.E.2d at 711.

---

[2] Although *Weaver* concerned arguments under the Federal Arbitration Act, the applicable federal and state provisions both allow a trial court to vacate an award where, *inter alia*, the arbitrators exceeded their powers. *Compare* 9 U.S.C. § 10(a)(4) (2018), *with* N.C. Gen. Stat. § 1-569.23(a)(4).

¶ 16         Each of the Subcontracts provides, in pertinent part, that "[a]ny controversy or claim of . . . [REM] against [CCI] shall, at the option of [CCI], be resolved by arbitration pursuant to the Construction Industry Arbitration Rules of the American Arbitration Association in effect on the date on which the demand for arbitration is made." AAA Rule 48(a), as quoted by the panel in its award, provides that "[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, equitable relief and specific performance of a contract." The Subcontracts do not explicitly preclude the equitable remedy that the panel fashioned; rather, they expressly vest the arbitration panel with broad discretion to craft equitable remedies through the specific adoption of the AAA Rules, including Rule 48(a). Hence, in estimating the "actual direct cost" incurred by REM pursuant to Article 31.8 of the Subcontracts, the panel did not exceed the vast equitable powers with which it was endowed by the parties.

¶ 17         Notably, CCI does not directly argue on appeal that the Subcontracts explicitly precluded the equitable remedy fashioned by the panel. Instead, CCI offers a series of arguments otherwise attacking the panel's equitable authority, including: (1) that "Rule 48(a) is an equitable remedy that is not applicable in this context"; (2) that even if Rule 48(a) were applicable, the relief designed by the panel was not "within the scope of the agreement of the parties" as required by Rule 48(a); and (3) that "Rule

48(a) does <u>not</u> allow an arbitration panel to award monetary damages in direct contradiction of the governing contract's terms" and that "[t]o hold otherwise would be to eviscerate the central concept underlying all arbitrations: that the arbitrators derive their powers from the parties' contract and are thus limited to awarding relief within the scope of that contract." These arguments are unpersuasive.

¶ 18    Although CCI asserts that the panel's award of monetary damages was in "direct contradiction of the [Subcontracts'] terms[,]" we again note that the Subcontracts themselves do not contain any express limitation that would preclude the panel's award. The Subcontracts provide that, in the event that CCI improperly terminated REM for default, REM would not be entitled to "compensation for profit and overhead"; "compensation for work not performed or materials not furnished"; or "exemplary, special or consequential damages, or anticipated profit[.]" But the Subcontracts explicitly state that REM "shall be entitled to the actual direct cost of all Subcontract Work satisfactorily performed and materials furnished prior to notification of termination." And AAA Rule 48(a), which the Subcontracts specifically adopt, authorizes the arbitration panel to "grant *any remedy* or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, *including*, but not limited to, *equitable relief*[.]" (Emphases added).

¶ 19    In its equitable award, the arbitration panel did not provide REM with any of the forms of compensation prohibited by the Subcontracts. In fact, it expressly

constrained its calculation of equitable relief—authorized by Rule 48(a)—to an approximation of "the amount of the contract funds earned by REM at the time of termination" and rejected REM's claims for "additional payment or compensation." Therefore, the arbitration panel's estimation of REM's "actual direct cost" was properly calculated to be consistent with the Subcontracts' terms.

¶ 20      At its essence, the sole source of CCI's complaints on appeal is that the panel estimated an approximate "amount of the contract funds earned by REM at the time of termination" when REM had not submitted any evidence to that effect, based on the panel's statement that it would be "unfair to deny any compensation to REM" under the circumstances presented. However, CCI cannot point to any provision in the Subcontracts that forbids the panel from (1) awarding this equitable relief—which, again, was explicitly authorized by Rule 48(a) and not specifically precluded by the terms of the Subcontracts—and thus (2) estimating the "actual direct cost" to which REM was entitled based on evidence in the record before it, regardless of which party provided that evidence. "[T]he parties could have—but did not—write into the contract a limiting provision" forbidding the arbitration panel from fashioning this specific remedy. *Faison & Gillespie v. Lorant*, 187 N.C. App. 567, 577, 654 S.E.2d 47, 54 (2007) (citation omitted).

¶ 21      We conclude that in the case at bar the arbitration panel did not "act[ ] contrary to the express authority conferred on them by statute and by the language of the

parties' private arbitration agreement." *Id.* at 575, 654 S.E.2d at 52. "In making [its] award the arbitrat[ion panel] construed the contract, as it was [its] right and duty to do. [It] added nothing to the agreement. Instead, [it] based [its] conclusions on a permissible construction of the written instrument." *Id.* at 577, 654 S.E.2d at 54 (citation omitted). Because the arbitration panel did not exceed the authority afforded it by the parties in the Subcontracts, the trial court did not err by confirming the award.

¶ 22      Lastly, CCI contends that "the panel's award should be vacated because the panel manifestly disregarded the law." CCI maintains that the panel acted in manifest disregard of the law by declining to apply the parties' subcontracts as written in calculating its damages award.

¶ 23      "To establish manifest disregard, a party must demonstrate: (1) the disputed legal principle is clearly defined and is not subject to reasonable debate; and (2) the arbitrator refused to apply that legal principle." *Warfield v. Icon Advisers, Inc*, 26 F.4th 666, 669–70 (4th Cir.) (citation and internal quotation marks omitted), *reh'g and reh'g en banc denied*, 2022 U.S. App. LEXIS 7583 (2022).

¶ 24      The "manifest disregard" analysis has been adopted by other jurisdictions, but has not been employed by the North Carolina courts; indeed, the federal circuit courts of appeal are split as to whether the "manifest disregard" ground is viable as a matter of federal law. *See id.* at 669–70 n.3. However, CCI asks this Court to adopt an

arbitrator's "manifest disregard of the law" as an additional, non-statutory ground for vacating an arbitrator's award.

¶ 25   In that we have already determined that the arbitration panel here did not "act[ ] contrary to the express authority conferred on them by statute and by the language of the parties' private arbitration agreement[,]" *Faison*, 187 N.C. App. at 575, 654 S.E.2d at 52, we need not accept CCI's invitation to adopt this alternative analysis, *see In re Fifth Third Bank, Nat. Ass'n*, 216 N.C. App. 482, 488, 716 S.E.2d 850, 855 (2011) (concluding that, because the appellant "fail[ed] to demonstrate that the Arbitrator either 'manifestly disregarded the law' or 'dispensed his own brand of industrial justice,' . . . we need not determine the extent, if any, to which 'manifest disregard of the law' remains a valid non-statutory basis for vacating an arbitration award" under the Federal Arbitration Act).

### *Conclusion*

¶ 26   For the foregoing reasons, we conclude that the trial court did not err in denying CCI's motion to modify or, alternatively, to partially vacate the award. The trial court's judgment and order confirming the arbitration award is affirmed.

AFFIRMED.

Judges INMAN and JACKSON concur.