FAISON & GILLESPIE, a General Partnership, Plaintiff v. BREE A. LORANT and BREE A. LORANT d/b/a THE LORANT LAW GROUP, Defendant

No. COA07-42

(Filed 18 December 2007)

### 1. Appeal and Error— record—timeliness—good faith

Although defendants contended that plaintiff did not timely file the record on appeal, plaintiff acted in good faith to verify that all modifications to the proposed record were incorporated to defendants' satisfaction, and promptly filed the record two days after verifying with defendants that the record was settled.

### 2. Arbitration and Mediation— arbitration—interest award— arbitrator's authority

An arbitrator's award of interest did not exceed the authority expressly conferred on him by the parties' private arbitration agreement where the agreement invited the arbitrator to award the discretionary relief deemed just and proper, and expressly incorporated AAA Rules and North Carolina General Statutes which permit an arbitrator to award remedies deemed just and appropriate. The interest awarded in this case was an element of the remedies sought rather than a separate claim.

Appeal by plaintiff from judgment entered 17 July 2006 by Judge Abraham Penn Jones in Durham County Superior Court. Heard in the Court of Appeals 10 September 2007.

*Manning, Fulton & Skinner, PA, by John B. McMillan, Thomas C. Kilpatrick, and Evan B. Horwitz, for plaintiff-appellant.*

*The Lorant Law Group, by Bree A. Lorant, for defendants-appellees.*

MARTIN, Chief Judge.

Plaintiff appeals from the trial court's order of 17 July 2006 modifying a 21 January 2006 arbitration award and denying plaintiff's motion for reconsideration of the trial court's 8 June 2006 order. For the following reasons, we reverse the trial court's order and remand for further proceedings consistent with this opinion.

The parties stipulate that Bree A. Lorant ("defendant") was employed as an associate attorney with the law firm of Faison & Gillespie ("plaintiff") beginning in early 2000. On 15 January 2004, defendant terminated her employment with plaintiff.

Plaintiff contends that defendant systematically removed 63,500 pages of computer data files between October 2003 and December 2003 in anticipation of her departure from plaintiff's firm in January 2004. With the assistance of information technology consultants, plaintiff claims to have recovered most files removed by defendant at a cost of $24,622.44. Plaintiff also contends that defendant began a solo practice—The Lorant Law Group (with Bree A. Lorant, collectively "defendants")—and actively solicited four clients from plaintiff's firm. Plaintiff alleges defendants owe fees and costs for the quantum meruit value of services rendered to those clients by plaintiff. Plaintiff further alleges that defendant Lorant intentionally double-billed three clients during her tenure with plaintiff's firm at a total cost of $594.42.

One week before a scheduled trial, after all claims and counterclaims were fully pled, the parties executed an Agreement for Arbitration ("Agreement") on 7 November 2005. The Agreement included the following provisions:

D. Following the termination of employment, certain disputes and controversies have arisen between the parties. Such disputes and controversies—all as more fully described in the Complaint and Counterclaim filed by the parties—are the subjects of a presently pending lawsuit [herein "Pending Litigation"] . . . .

**FAISON & GILLESPIE v. LORANT**

[187 N.C. App. 567 (2007)]

E. The parties have agreed to resolve their disputes through binding arbitration.

. . . .

1. **Submission To Binding Arbitration**. The parties hereby agree to submit all claims arising out of the transaction at issue in the Pending Litigation by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association and the terms of this Agreement.

2. **Scope Of Arbitration**. The arbitration shall include all claims and defenses asserted by the parties in the Pending Litigation.

. . . .

5. **Rules Of Arbitration**. The arbitration shall be governed by the Commercial Arbitration Rules of the American Arbitration Association [herein "Governing Arbitration Rules"]. If any other provisions of this Agreement conflict with such rules, then the provisions of this Agreement shall control. The provisions of this Agreement shall also control any matters addressed by it which are not addressed by the Governing Arbitration Rules or as to which the Governing Arbitration Rules permit a variation. If any procedural issues arise that are not addressed by the Governing Arbitration Rules or this Agreement, then such issues shall be resolved in accordance with the provisions of the North Carolina Revised Uniform Arbitration Act, N.C.G.S. § 1-569.1 *et seq.*

. . . .

9. **Governing Law**. The interpretation and enforcement of this Agreement shall be governed by the North Carolina Revised Uniform Arbitration Act, N.C.G.S. § 1-569.1 *et seq.*

. . . .

11. **Entire Agreement**. The parties acknowledge and represent that this Agreement contains the entire agreement between the parties regarding the matters set forth and that it supersedes all previous negotiations, discussions

and understandings regarding such matters. The terms of this Agreement are contractual and not a mere recital.

By the terms of the Agreement, all claims arising out of the Pending Litigation between the parties were submitted to the arbitrator, retired Superior Court Judge James M. Long.

The arbitration was conducted for two days beginning 19 December 2005. The arbitrator served his Arbitration Decision on 21 January 2006. Plaintiff moved to confirm the Arbitration Decision on 8 February 2006 in the superior court. Defendants submitted a motion to the arbitrator to modify the Arbitration Decision pursuant to N.C.G.S. § 1-569.20 on 16 February 2006. The arbitrator denied defendants' motion to modify the Arbitration Decision on 25 March 2006. Defendants appealed the arbitrator's denial of their motion to modify the Arbitration Decision to the superior court. On 8 June 2006, the superior court granted defendants' motion to modify the Arbitration Decision, striking the grants of interest awarded to plaintiff. On 13 June 2006, plaintiff moved the superior court to reconsider the modification of the Arbitration Decision, and to request that the superior court amend its 8 June 2006 order to make findings of fact and conclusions of law in support of the court's ruling. Defendants filed an amended motion to confirm the superior court's order on 16 June 2006. On 17 July 2006, the superior court entered an order granting defendants' motion to confirm the modified Arbitration Decision pursuant to its 8 June 2006 order.

[1] We first consider defendants' motion to this Court to dismiss plaintiff's appeal on the grounds plaintiff failed to timely settle and file the record on appeal pursuant to Rules 11 and 12 of the North Carolina Rules of Appellate Procedure. We deny the motion to dismiss plaintiff's appeal.

" 'The Rules of Appellate Procedure are mandatory and failure to follow the rules subjects an appeal to dismissal.' " *Pollock v. Parnell*, 126 N.C. App. 358, 361, 484 S.E.2d 864, 866 (1997) (quoting *Wiseman v. Wiseman*, 68 N.C. App. 252, 255, 314 S.E.2d 566, 567-68 (1984)). "The rules are designed to keep the process of perfecting an appeal flowing in an orderly manner." *Id.* (citing *Craver v. Craver*, 298 N.C. 231, 236, 258 S.E.2d 357, 361 (1979)). However, this Court has held that "when a litigant exercises 'substantial compliance' with the appellate rules, the appeal may not be dismissed for a technical violation of the rules." *Spencer v. Spencer*, 156 N.C. App. 1, 8, 575 S.E.2d 780, 785 (2003).

Rule 11 of the North Carolina Rules of Appellate Procedure provides: "Within . . . 35 days after filing of the notice of appeal if no transcript was ordered, the parties may by agreement entered in the record on appeal settle a proposed record on appeal prepared by any party in accordance with Rule 9 as the record on appeal." N.C.R. App. P. 11(a) (2007). Rule 11 further provides that, "[w]ithin 30 days . . . after service upon appellee of appellant's proposed record on appeal, that appellee may serve upon all other parties specific amendments or objections to the proposed record on appeal, or a proposed alternative record on appeal." N.C.R. App. P. 11(c) (2007). Finally, Rule 12 provides that, "[w]ithin 15 days after the record on appeal has been settled by any of the procedures provided in Rule 11 or Rule 18, the appellant shall file the record on appeal with the clerk of the court to which appeal is taken." N.C.R. App. P. 12(a) (2007).

In the present case, plaintiff filed and served Notice of Appeal on 1 August 2006. On 6 September 2006, plaintiff timely served its proposed record on appeal upon defendants consistent with Rule 11(a). On 28 September 2006, defendants timely served their proposed amendments to the record on appeal upon plaintiff consistent with Rule 11(c). Between 11 October 2006 and 18 October 2006, plaintiff and defendants corresponded regularly by letter and telephone to negotiate settlement of the record on appeal. After plaintiff incorporated modifications requested by defendants, plaintiff sent the proposed record, totaling almost 600 pages, to defendants on 14 November 2006. The parties exchanged e-mails at the end of November 2006. Plaintiff's counsel made several attempts to confirm with defendants that the 14 November 2006 revised record on appeal accurately reflected the parties' intent. However, according to the sworn affidavit of 5 June 2007, defendants could not be reached to address this matter. Further, defendant Lorant was on secured leave between 21 December 2006 and 4 January 2007. One business day after returning from secured leave, plaintiff confirmed with defendants that the proposed record on appeal was satisfactory and filed the settled record on appeal with the Court of Appeals on 10 January 2007.

Defendants contend that the record on appeal was settled on 18 October 2006. For this reason, in order to comply with Rule 12(a), defendants contend that plaintiff should have filed the record on appeal with this Court no later than 2 November 2006, more than two months prior to plaintiff's filing date of 10 January 2007.

However, we conclude that plaintiff acted in good faith to verify that all modifications to the proposed record were incorporated to defendants' satisfaction, and promptly filed the record two days after verifying with defendants that the record was settled. Therefore, defendants' Motion to Dismiss is denied.

---

[2] Plaintiff contends on appeal that the trial court's 8 June and 17 July 2006 orders "striking each award for payment of interest to [p]laintiff [in the Arbitration Decision], including contractual and pre-judgment interest" were not consistent with facts or law. Plaintiff argues the arbitrator was within the scope of his authority to award interest as a remedy for the claims before him, and that the interest awarded in the Arbitration Decision was an element of damages on claims properly before the arbitrator, pursuant to the parties' Agreement, which included claims for withholding fees based on the quantum meruit value of services rendered, tortious destruction of plaintiff's computer data, double-billing client expense reimbursements, and breach of contract. Defendants argue that the award of interest is not an element of a remedy, but a separate claim beyond the scope of the parties' private arbitration agreement. After careful consideration, we agree with plaintiff.

Our Supreme Court has long held that the right to appeal an arbitration award is limited.

> If an arbitrator makes a mistake, either as to law or fact, it is the misfortune of the party, and there is no help for it. There is no right of appeal, and the Court has no power to revise the decisions of "judges who are of the parties' own choosing." An award is intended to settle the matter in controversy and thus save the expense of litigation. If a mistake be a sufficient ground for setting aside an award, it opens a door for coming into court in almost every case; for in nine cases out of ten some mistake either of law or fact may be suggested by the dissatisfied party. Thus the object of references would be defeated and arbitration instead of ending would tend to increase litigation.

*Patton v. Garrett*, 116 N.C. 497, 504, 21 S.E. 679, 682-83 (1895). For these reasons, " '[a]n [arbitration] award is ordinarily presumed to be valid, and the party seeking to set it aside has the burden of demonstrating an objective basis which supports his allegations that one of the[] grounds [for setting it aside] exists.' " *G.L. Wilson Bldg. Co. v. Thorneburg Hosiery Co., Inc.*, 85 N.C. App. 684, 686, 355 S.E.2d 815, 817 (1987).

"If the dispute [resolved by the arbitrator] is within the scope of the arbitration agreement, then the [trial] court must confirm the [arbitration] award unless one of the statutory grounds for vacating or modifying the award exists" pursuant to N.C.G.S. §§ 1-569.23 and 1-569.24. *Carteret County v. United Contractors of Kinston, Inc.*, 120 N.C. App. 336, 346, 462 S.E.2d 816, 823 (1995) (citing *FCR Greensboro, Inc. v. C & M Investments*, 119 N.C. App. 575, 577, 459 S.E.2d 292, 294 (1995)). " '[O]nly awards reflecting mathematical errors, errors relating to form, and errors resulting from arbitrators exceeding their authority shall be modified or corrected by the reviewing courts.' " *Palmer v. Duke Power Co.*, 129 N.C. App. 488, 496-97, 499 S.E.2d 801, 807 (1998) (quoting *Carolina Virginia Fashion Exhibitors, Inc. v. Gunter*, 41 N.C. App. 407, 414, 255 S.E.2d 414, 419 (1979)) (alteration in original).

An arbitrator's ability to act is both created and limited by the authority conferred on him by the parties' private arbitration agreement. *See Calvine Cotton Mills, Inc. v. Textile Workers Union*, 238 N.C. 719, 722, 79 S.E.2d 181, 183 (1953) (citing *Thomasville Chair Co. v. United Furniture Workers*, 233 N.C. 46, 62 S.E.2d 535 (1950)) ("[A]n arbitrator must act within the scope of the authority conferred on him by the arbitration agreement, and his award is subject to attack for that he, acting under a mistake of law, exceeded his authority . . . ."). Only those claims submitted to the arbitrator may be decided by him.

> Because the duty to arbitrate is contractual, only those disputes which the parties agreed to submit to arbitration may be so resolved. *See Coach Lines v. Brotherhood*, 254 N.C. 60, 67-68, 118 S.E.2d 37, 43 (1961). To determine whether the parties agreed to submit a particular dispute or claim to arbitration, we must look at the language in the agreement, *viz.*, the arbitration clause, and ascertain whether the claims fall within its scope.

*Rodgers Builders, Inc. v. McQueen*, 76 N.C. App. 16, 23-24, 331 S.E.2d 726, 731 (1985).

In the present case, the trial court struck the interest granted to plaintiff in the Arbitration Decision pursuant to N.C.G.S. § 1-596.24(a)(2) of the Revised Uniform Arbitration Act. Section 1-596.24(a)(2) provides:

> (a) Upon motion made within 90 days after the moving party receives notice of the award pursuant to G.S. 1-569.19 or

within 90 days after the moving party receives notice of a modified or corrected award pursuant to G.S. 1-569.20, the court shall modify or correct the award if:

. . . .

> (2) The arbitrator has *made an award on a claim not submitted to the arbitrator*, and the award may be corrected without affecting the merits of the decision on the claims submitted . . . .

N.C. Gen. Stat. § 1-569.24(a)(2) (2005) (emphasis added). In other words, the trial court determined that the arbitrator made an award "on a claim not submitted to" him, thereby exceeding the scope of his authority conferred by the parties' Agreement.

"[A]n [arbitration] award is always open to attack on the ground that the arbitrators exceeded their powers." *Thomasville Chair Co.*, 233 N.C. at 48, 62 S.E.2d at 537. However, "[t]here have been 'only a few cases in which our courts have held that an arbitrator exceeded his powers.'" *Smith v. Young Moving & Storage, Inc.*, 167 N.C. App. 487, 490, 606 S.E.2d 173, 176 (2004) (quoting *Howell v. Wilson*, 136 N.C. App. 827, 830, 526 S.E.2d 194, 196 (2000)). This Court summarized these exceptional cases as follows:

> In *Wilson Building Co. v. Thorneburg Hosiery Co.*, 85 N.C. App. 684, 355 S.E.2d 815 (1987), we concluded that, because the amount of attorney's fees for debts and obligations is set by statute, the arbitrator exceeded his authority by ordering fees in excess of that amount. More instructive, however, is the case of *FCR Greensboro, Inc. v. C & M Investments*, 119 N.C. App. 575, 459 S.E.2d 292 (1995). In that case, the parties submitted for arbitration the amount of liquidated damages caused by the defendant completing construction of a building after the agreed-upon date. The arbitrator awarded plaintiff these damages, but then also awarded plaintiff two other kinds of damages: (1) liquidated damages caused by delays in starting construction; and (2) reimbursement for certain changes plaintiff made to the sprinkler system that was installed. We held that the arbitrator exceeded his powers by making these additional awards.

> These two cases illustrate that an arbitrator exceeds his authority when he arbitrates *additional claims* and matters not properly before him.

*Howell*, 136 N.C. App. at 830, 526 S.E.2d at 196 (citations omitted). In other words, the arbitrators in these earlier cases acted contrary to the express authority conferred on them by statute and by the language of the parties' private arbitration agreement. However, we do not find this to be true in the present case.

In their arbitration agreement, the parties "agree[d] to submit *all claims* arising out of the transaction at issue in the Pending Litigation" which "include[d] *all claims* and defenses asserted by the parties in the Pending Litigation." (Emphasis added.) The Pending Litigation included "disputes and controversies" pled in plaintiff's filed Amended Complaint and defendants' Answer and Counterclaims. Since the language of the parties' Agreement unambiguously submitted "all claims" for the parties to binding arbitration, and incorporated by reference all remedies requested by the parties in their filed pleadings, we conclude there were no claims nor remedies pled which could not be decided by the arbitrator.

Defendants argue, however, that, like *FCR Greensboro* referenced above, the arbitrator exceeded his authority because the award of interest to plaintiff was an award of damages neither expressly pled nor authorized by the parties' Agreement. We disagree.

Our Supreme Court has stated that " '[t]he prayer for relief does not determine what relief ultimately will be awarded.' Instead, 'the court should grant the relief to which a party is entitled, whether or not demanded in his pleading.' " *Holloway v. Wachovia Bank & Trust Co., N.A.*, 339 N.C. 338, 346, 452 S.E.2d 233, 237-38 (1994) (citation omitted); 61B Am. Jur. 2d *Pleading* § 935 (1999) ("A prayer for general equitable relief justifies a court in granting relief beyond what is asked for in specific prayers, as long as such relief is consistent with the pleadings and the evidence does not surprise the opposing party."). Here, while neither party specifically requested damages that expressly included interest, both parties' filings, which were incorporated by reference in the Agreement, sought discretionary relief which prayed "[f]or such other and further relief as the Court deems just and proper."

Further, the parties agreed that the "interpretation and enforcement of this Agreement shall be governed by the North Carolina Revised Uniform Arbitration Act." The Revised Uniform Arbitration Act, codified in Article 45C of the North Carolina General Statutes, applies to agreements to arbitrate entered into on or after 1 January 2004. *See generally* N.C. Gen. Stat. §§ 1-569.1 to 1-569.31 (2005).

N.C.G.S. § 1-569.21(c) of the Revised Uniform Arbitration Act provides:

> As to all remedies other than those authorized by subsections (a) [(addressing punitive damages)] and (b) [(addressing attorneys' fees, which may *only* be awarded if authorized by law and if the arbitration agreement *expressly* provides for such an award)] of this section, an arbitrator may order *any remedies* the arbitrator considers just and appropriate under the circumstances of the arbitration proceeding. The fact that a remedy could not or would not be granted by the court is not a ground for refusing to confirm an award under G.S. 1-569.22 or for vacating an award under G.S. 1-569.23.

N.C. Gen. Stat. § 1-569.21(c) (2005) (emphasis added).

> This rule follows cases holding that absent clearly restrictive language, an arbitrator must be allowed latitude in fashioning an appropriate remedy. By submitting to arbitration, it is implied that the arbitrator has the power to order an appropriate remedy, even though the contract may be silent as to any specific or general relief the arbitrator may grant. . . . If a contract specifically limits the authority of the arbitrator to grant a particular type of relief, then the remedies are confined to what is stated, but an arbitrator is allowed flexibility in formulating remedies . . . where the contract requiring arbitration was not explicit on the subject of remedies and *did not prohibit the arbitrator's use of a specific remedy.*

21 Samuel Williston, *A Treatise on the Law of Contracts* § 57:111, at 575-76 (Richard A. Lord ed., 4th ed. 2001) (emphasis added) (footnotes omitted).

It is also relevant that the parties contracted to submit to "binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association [("AAA Rules")] and the terms of this Agreement," and provided that, "[i]f any other provisions of this Agreement conflict with [the AAA R]ules, then the provisions of this Agreement shall control." In other words, according to the express language of the parties' Agreement, the Agreement and the AAA Rules were to be read together, and only in the face of a conflict should the Agreement control to the exclusion of the AAA Rules.

Paralleling the language of N.C.G.S. § 1-569.21(c), Rule 43 of the AAA Rules provides, in part:

(a) The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract.

. . . .

(d) The award of the arbitrator(s) may include:

   (i) interest at such rate and from such date as the arbitrator(s) may deem appropriate; and

   (ii) an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement.

Am. Arb. Ass'n, Commercial Arbitration Rules & Mediation Procedures, R. 43 (2005), 2005 WL 5314564 (amended Sept. 1, 2007) (language of relevant rule is unchanged by 2007 amendments). The AAA Rules, like N.C.G.S. § 1-569.21, allow the arbitrator to grant "any remedy" the arbitrator deems "just" and appropriate, with the exception of attorneys' fees, which must be expressly agreed upon by the parties and specifically submitted to the arbitrator for consideration. Additionally, in the AAA Rules, as in the North Carolina General Statutes, there is no limiting or conditional language regarding an arbitrator's decision to award interest to a party—i.e., the parties do not have to expressly agree to submit a remedy of interest to the arbitrator for the arbitrator to have the power to grant such a remedy, provided that an award of interest as a remedy is not expressly limited by the language of the parties' arbitration agreement.

Just as our Supreme Court did in *Calvine Cotton Mills*, we conclude that "[t]he parties could have—but did not—write into the contract a[] limiting provision [on the discretionary remedies available to the arbitrator]." *Calvine Cotton Mills, Inc.*, 238 N.C. at 723, 79 S.E.2d at 184. "In making his award the arbitrator construed the contract, as it was his right and duty to do. He added nothing to the agreement. Instead, he based his conclusions on a permissible construction of the written instrument." *Id.*

Here, the arbitrator awarded backward-looking interest "at the legal rate of 8% per annum" on (1) expenses for recovery of plaintiff's deleted computer records, (2) amounts double-billed to clients, and (3) fees withheld for quantum meruit value of services rendered by defendant while employed by plaintiff. This interest was calculated to

begin on the date on which each breach occurred, and to end on the date of the Arbitration Decision, and totaled $41,874.93. Additionally, the arbitrator awarded forward-looking interest on the total award of $360,541.10 calculated "at the rate of 8% per annum from the date of this decision until paid."

Defendants argue that N.C.G.S. § 24-5 only applies to amounts of judgments which bear interest after "the date of entry of judgment under G.S. 1A-1, Rule 58," *see* N.C. Gen. Stat. § 24-5(a), (b) (2005), and not to arbitration awards that have not yet been confirmed and entered by a trial court. *See* N.C. Gen. Stat. §§ 1-569.22, 1-569.25 (2005); *Palmer*, 129 N.C. App. at 498, 499 S.E.2d at 807 ("We similarly reject plaintiff's argument that the arbitrator's award should be treated like a jury verdict, upon which a judge could then award pre-judgment interest in entering judgment on that verdict. . . . [W]e have found no citation of authority for this proposition."). While defendants do not address the language regarding breaches of contract actions under N.C.G.S. § 24-5(a) which *is* consistent with the arbitrator's award, *see* N.C. Gen. Stat. § 24-5(a) ("[T]he amount awarded on the contract bears interest *from the date of breach.*") (emphasis added), we do not need to reach that issue here.

An arbitrator's award cannot be modified for error of law unless that error caused the arbitrator to act beyond the scope of his authority. "Indeed, 'an arbitrator is not bound by substantive law or rules of evidence, [and] an award may not be vacated merely because the arbitrator erred as to law or fact.' " *Smith*, 167 N.C. App. at 489, 606 S.E.2d at 175 (quoting *Scholar Bus. Assocs. v. Davis*, 138 N.C. App. 298, 301, 531 S.E.2d 236, 239 (2000)); *Gunter*, 41 N.C. App. at 411, 255 S.E.2d at 417-18 ("The general rule is that errors of law or fact, or an erroneous decision of matters submitted to the judgment of the arbitrators, are insufficient to invalidate an award fairly and honestly made."). Again, as our Supreme Court held in *Patton*:

> If an arbitrator makes a mistake, either as to law or fact, it is the misfortune of the party, and there is no help for it. There is no right of appeal, and the Court has no power to revise the decisions of "judges who are of the parties' own choosing."

*Patton*, 116 N.C. at 504, 21 S.E. at 682.

In the present case, the arbitrator might have presumed that pre-judgment interest applies to arbitration awards, or might have determined that an award of backward-looking interest was within

his discretionary, contractual, and statutory authority. However, the rationale underlying the arbitrator's decision to award interest, and the determination of whether or not the arbitrator acted under mistake of law, are not issues before this Court. We conclude only that the arbitrator did not act under any mistake of law which resulted in his acting in excess of his authority.

Therefore, we hold that, by inviting the arbitrator to award discretionary relief it "deem[ed] just and proper," coupled with the parties' express incorporation of the AAA Rules and the North Carolina General Statutes which permit an arbitrator to award remedies it deems "just and appropriate under the circumstances of the arbitration proceeding," the arbitrator's award of the interest did not exceed the authority expressly conferred on him by the parties' private arbitration agreement.

In the alternative, defendants argue the interest awarded by the arbitrator was not a remedy, but a separate claim not before him under the Agreement. However, we conclude the interest awarded in the Arbitration Decision was an element of the remedies sought, rather than a separate claim.

"Interest is the compensation allowed by law, or fixed by the parties, for the use, or forbearance, or detention of money." *Members Interior Constr. v. Leader Constr. Co.*, 124 N.C. App. 121, 125, 476 S.E.2d 399, 402 (1996) (internal quotation marks omitted). " '[I]nterest . . . means compensation allowed by law as additional damages for the *lost use of money* during the time between the accrual of the claim and the date of the judgment.' " *Id.* (second alteration in original); 25 Samuel Williston, *A Treatise on the Law of Contracts* § 66:109, at 126-29 (Richard A. Lord ed., 4th ed. 2002) ("[Interest] may be awarded by the law as damages although no agreement for interest has been made by the parties. . . . The purpose of allowing interest as damages is to give the aggrieved party full indemnity for its loss.") (footnotes omitted).

In his Arbitration Decision, the arbitrator identified the pled claims and the corresponding values upon which the interest would apply. Further, the interest calculations appeared in the section of the Arbitration Decision in which the damage awards were listed, which also came after the sections addressing plaintiff's claims and defendants' counterclaims. Therefore, the interest awarded in this case was not a separate claim, but an element of the remedies sought, assessed on values awarded on claims properly before the arbitrator.

For the reasons given, we reverse the trial court's 17 July 2006 order modifying the arbitrator's award, and remand to the Superior Court of Durham County for entry of an order confirming, and entering judgment on, the 21 January 2006 Arbitration Decision in its original form. Our decision renders unnecessary our consideration of plaintiff's remaining assignments of error, and we do not address them.

Reversed.

Judges STROUD and ARROWOOD concur.