Trilogy Capital Partners, LLC v. Killian, 2015 NCBC 103.

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 7763

TRILOGY CAPITAL PARTNERS, LLC;      )
DAVID L. HAUSER; ROBERT S. LILIEN AS )
TRUSTEE OF THE ANDREAS BECHTLER     )
CHARITABLE REMAINDER UNITRUST U/A )
DATED MARCH 9, 1998; and ROBERT S.   )
LILIEN AS TRUSTEE OF THE HANS C.     )
BECHTLER TRUST U/A DATED            )
DECEMBER 27, 1979,                  )
           Claimants,                   )
                                        )
        v.                          )
                                        )
RAY A. KILLIAN, JR.; ALAN C. SIMONINI; )
and KILLIAN/SIMONINI, LLC,          )
           Respondents.                 )
_____ )
                                        )
RAY A. KILLIAN, JR.; ALAN C. SIMONINI; )
SIMONINI BUILDERS, INC.; SIMONINI   )
BUILDERS OF NORTH CAROLINA, LLC;    )
SIMONINI BUILDERS OF SOUTH          )
CAROLINA, INC., and KILLIAN/SIMONINI, )
LLC DERIVATIVELY ON BEHALF OF       )
WESTMORELAND LAKE, LLC,             )
           Third-Party Claimants,       )
                                        )
        v.                          )
                                        )
TRILOGY CAPITAL PARTNERS, LLC;      )
CLASSICA HOMES, LLC; ROBERT S.      )
LILIEN; and WESTMORELAND LAKE, LLC, )
           Third-Party Respondents.     )

OPINION AND ORDER

THIS CAUSE was designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases.

THIS MATTER comes before the Court on Claimants' Motion to Confirm Arbitration Award ("Motion to Confirm") pursuant to G.S. § 1-569.22, and on Killian and Simonini's Motion to Vacate Arbitration Award ("Motion to Vacate") pursuant to G.S. § 1-569.23(a) (collectively, "Motions"). On September 9, 2015, the Court held a hearing on the Motions.

THE COURT, having considered the Motions, the briefs in support and opposition thereof, the arguments of counsel, and other appropriate matters of record, FINDS and CONCLUDES as stated herein:

> *Nexsen Pruet, LLC, by James C. Smith, Esq., and Jonathan E. Schulz, Esq., for Claimants.*

> *Rayburn Copper & Durham, P.A., by C. Richard Rayburn, Jr. Esq., David S. Melin, Esq., for Movants.*

McGuire, Judge.

## A. FACTS AND PROCEDURAL BACKGROUND

1. Claimants are Trilogy Capital Partners, LLC, a North Carolina limited liability company; David L. Hauser; Robert S. Lilien as trustee of the Andreas H. Bechtler Charitable Remainder Unitrust under an agreement dated March 9, 1998; and Robert S. Lilien as trustee of the Hans C. Bechtler Trust under an agreement dated December 27, 1979 (herein, the Court will refer to the Claimants collectively as "Trilogy").

2. Respondents[1] are Ray A. Killian ("Killian"), Alan C. Simonini ("Simonini") and Killian/Simonini, LLC ("K/S, LLC"), a North Carolina limited liability company. Killian and Simonini (collectively, "Movants") were the principals of K/S, LLC. K/S, LLC apparently was a real estate development construction company.

---

[1] K/S, LLC is not a party to the Motion to Vacate before this Court, which was filed only by Killian and Simonini individually. K/S, LLC is a "Respondent" in the underlying AAA arbitration, and is named as a Respondent in the caption of this civil action.

3.      Between 2005 and May 16, 2008, Trilogy and K/S, LLC entered into relationships with four residential real estate projects located in or near Charlotte, North Carolina (collectively, the "Projects"). Each of the Projects was owned by a separate limited liability company – Bellmore Hall, LLC ("Bellmore"), the Pavilion of Huntersville, LLC ("Pavilion"), Westmoreland Lake, LLC ("Westmoreland"), and Christenbury Land Investments, LLC ("Christenbury")[2] (collectively, "the LLCs"). Each of the LLCs was governed by a written operating agreement (collectively referred to herein as the "Operating Agreements").[3]  Trilogy and K/S, LLC were the members of Bellmore, Pavillion, and Westmoreland. Killian and Simonini were the Managers of the LLCs. Killian and Simonini each signed the Operating Agreements solely for purposes of certain obligations each assumed under the agreements, but they were not individually members of the LLCs.

4.      The basic business deal between the parties regarding these four Projects was as follows: (1) Trilogy contributed 100% of the initial capital required by the LLCs, (2) K/S, LLC obtained land development loans from various banks to be used to acquire and develop the properties, (3) If the LLCs needed additional capital in order to continue their activities, pay their debts and obligations, or complete their projects, then K/S, LLC agreed to contribute 100% of any such additional capital, and Killian and Simonini personally, and jointly and severally, guaranteed the obligations of K/S, LLC to make the additional capital

---

[2] The Christenbury project was slightly different. In Christenbury, there were two developers, K/S and Provident Development Group, Inc. ("PDG"). Under the Christenbury Operating Agreement, K/S agreed to contribute 50% of the additional capital needed, and PDG agreed to contribute the other 50%. Killian and Simonini personally guaranteed K/S's 50% obligation, and Thomas D. Waters personally guaranteed PDG's 50% obligation.

[3] The parties have indicated that the Operating Agreements for at least three of the LLCs (Bellmore, Pavillion and Westmoreland) were identical. Accordingly, the Court has relied upon the "Operating Agreement of Bellmore Hall, LLC" that the parties placed in the record for citation and quotation references.

contributions. Specifically, the Operating Agreements provided as follows regarding additional capital contributions for the LLCs:

5.1. Capital Contributions of Members.

(b) Additional Capital Contributions.

(i) If there should occur any cost overrun, revenue shortfall or other adverse economic factor affecting the Company, the Company shall attempt to satisfy such shortfall using proceeds from the Land Development Loans. To the extent such cost overrun, revenue shortfall or other economic factor affecting the Company cannot be satisfied using such loan proceeds or to the extent it is not a budgeted expense under the Project Pro-Forma (taking into account any and all contingency line items) (individually, "Financial Shortfall" and collectively, "Financial Shortfalls"), then if any Capital Contributions in addition to those indicated in Section 5.1(a) are required for the Company to continue its activities, pay its debts and obligations as they become due, or complete the Project (such completion, as determined in good faith by all of the Members), Trilogy shall have the right but not the obligation to contribute to the Company the capital so required (each, an "Elective Capital Contribution").

(ii) In the event Trilogy does not make an Elective Capital Contribution within fifteen (15) days following the date the Managers provide written notice to the Members of the amount of additional capital needed under this Section 5.1(b), then K/S agrees to contribute to the Company one hundred percent (100%) of the capital needed (each, a "Required Capital Contribution"). Any such Required Capital Contributions shall be made within thirty (30) days after the date on which the Managers provide written notice to the Members of the amount of additional capital needed under this Section ("Due Date"). Killian and Simonini hereby unconditionally, jointly and severally, guarantee the obligation of K/S to make Required Capital Contributions.

(iii) Killian and Simonini, jointly and severally agree to cause K/S to make such Required Capital Contributions, and such obligation shall include, but not be limited to, making cash capital contributions to K/S to enable K/S to make the Required Capital Contributions. This obligation is intended to be the personal, individual, and unconditional guarantees of Killian and Simonini, jointly and severally of the Required Capital Contribution obligations of K/S. This personal obligation by Killian and Simonini, jointly and severally, is for the benefit of Trilogy and may be enforced by Trilogy, without prejudice to any other course of action elected by Trilogy (including the furnishing of such needed additional capital on an interim basis by Special Capital Contribution or otherwise). The personal promises and guarantees in this paragraph are not for the benefit of any other third party and are not enforceable by any such party (other than Trilogy).

5. The Operating Agreements also provided in Section 7.2(b) that after all debts and expenses of the LLCs were paid, any remaining cash was to be distributed in the following order: first, a "preferred return" on the Trilogy's initial capital contributions; second, a return of the Trilogy's unreimbursed capital contributions; third, a return of any capital contributed by K/S, LLC and Killian and Simonini; and fourth, any remaining cash distributed to the members in accordance with their respective profit sharing percentage interests.

6. Each of the four Operating Agreements also contained identical arbitration agreements, which provided in Section 12.12 that:

> Any dispute or controversy arising out of or relating to this Agreement shall be determined and settled by arbitration in the City of Charlotte, North Carolina, in accordance with then prevailing Commercial Arbitration Rules of the American Arbitration Association. The award rendered by the arbitrator(s) shall be final and conclusive. The expenses of the arbitration shall be borne equally by the parties to the arbitration, provided that each party shall pay for and bear the cost of its own experts and legal counsel.

7. In 2008, the U.S economy entered the Great Recession, during which credit markets drastically contracted, and the market for residential real estate was impacted significantly. The rate of builder lot take-downs for each of the Projects was severely affected. The decrease in builder activity reduced the expected profits for the Projects. As a result of the Recession, the value of the lots in Bellmore and Pavilion declined below the amount necessary to pay the respective acquisition and development loans for those two Projects, and the loans went into default.

8. When the acquisition and development loans for each of the four Projects went into default, K/S, LLC's contractual obligations to contribute additional capital and Killian and Simonini' s guarantee were triggered.[4] It is undisputed that neither K/S, LLC nor Killian

---

[4] Mem. Supp. Mot. Confirm 5.

and Simonini made the capital contribution,[5] and the Bellmore and Pavilion projects completely collapsed. To pay off the Bellmore and Pavilion loans would have required Respondents to make "additional capital contributions in the amount[s] of $5,538,835 and $2,200,000, respectively."[6]

9. Subsequently, the LLCs reached settlements with the banks and dissolved the Bellmore and Pavilion projects. The Westmoreland and Christenbury projects were completed through the creation of a new construction company to buy lots and repay the banks on a substantially elongated repayment schedule. Nevertheless, Trilogy contends that it received a "significantly reduced [ ] amount of money" on the Westmoreland and Christenbury projects than it would have received had Respondents made the capital contributions.[7]

10. On December 26, 2013, Trilogy filed their Statement of Claims with the American Arbitration Association ("AAA") in Charlotte, North Carolina. On July 11, 2014, Trilogy filed an Amended Statement of Claims with the AAA. Subsequently, an arbitration hearing was held before the parties' designated Arbitrator, Jeffrey J. Davis, from January 12 to January 16, 2015. The parties agreed that the Arbitrator would provide an unreasoned award. At the hearing, Trilogy presented evidence regarding its projected losses from the failures of the four Projects, including lost preferred returns provided for in the Operating Agreements and the loss of the return of Trilogy's original capital contribution. Trilogy also presented evidence that the amount of the capital contribution that it contends K/S, LLC and Killian and Simonini as personal guarantors were required to make to the LLCs was $7,738,000.00.

---

[5] Killian and Simonini claim that they nevertheless "contributed approximately $442,000 to satisfy liabilities of Bellmore and $667,000 to satisfy liabilities of Pavilion." (Br. Supp. Mot. Vacate 4).
[6] Reply Br. Supp. Mot. Vacate 2.
[7] Mem. Supp. Mot. Confirm 6.

11.     On January 26, 2015, the Arbitrator issued his Award of Arbitrator.  Because the Award of Arbitrator incorrectly indicated that the parties had waived oral hearings, the Arbitrator issued a Corrected Award of Arbitrator on January 28, 2015 (hereinafter, the "Award").  The Award read in full as follows:

> I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into by the above-named parties, and having been duly sworn, hereby correct the Award in this matter pursuant to Rule 50 of the Commercial Rules of the American Arbitration Association, to reflect that hearings were not waived, but rather were held on January 12, 13, 14, 15, and 16, 2015, and submissions were made thereafter through January 20, 2015.  Having heard the evidence and arguments, and having fully reviewed and considered the written documents submitted to me, do hereby, AWARD, as follows:

> Claimant Trilogy Partners, LLC shall recover of Respondents Ray A. Killian, Jr., Alan C. Simonini, and Killian/Simonini, LLC, jointly and severally, the sum of Four Million, One Hundred Eighty One Thousand, Seven Hundred Forty Dollars, ($4,181,740.00).

> All other claims and counterclaims, including Claimants' request for attorney fees, are denied.

> The administrative fees of the American Arbitration Association totaling $18,800.00 are to be borne as incurred, and the compensation of the arbitrator totaling $21,907.50 is to borne as incurred.

> This award is in full settlement of all claims submitted to this Arbitration.  All claims not expressly granted herein are hereby denied.

12.     On April 23, 2015, Killian and Simonini filed the Motion to Vacate.  K/S, LLC is not a party to the Motion to Vacate and does not challenge the Award.  Trilogy has filed a response in opposition to the Motion to Vacate.

13.     On June 9, 2015, Trilogy filed its Motion to Confirm.  Killian and Simonini have filed a response in opposition to the Motion to Confirm.

14.     The Motions have been fully briefed and argued and are ripe for determination.

## B.     DISCUSSION AND ANALYSIS.

*The Applicable Law.*

15.    This proceeding is governed by the North Carolina Revised Uniform Arbitration Act, G.S. § 1-569.1 *et seq.* The confirmation of an arbitration award is subject to G.S. § 1-569.22, which states:

> After a party to an arbitration receives notice of an award, the party may make a motion to the court for an order confirming the award. Upon motion of a party for an order confirming the award, the court shall issue a confirming order unless the award is modified or corrected pursuant to G.S. 1-569.20 or G.S. 1-569.24 or is vacated pursuant to G.S. 1-569.23.

16.    G.S. § 1-569.23(a)(4) provides that a court may vacate an arbitrator's award when, *inter alia*, "[a]n arbitrator exceeded the arbitrator's powers."

17.    "Judicial review of an arbitration award is severely limited in order to encourage the use of arbitration and in turn avoid expensive and lengthy litigation." *First Union Sec., Inc. v. Lorelli*, 168 N.C. App. 398, 400 (2005). The "foundation of the arbitration process is that by mutual consent the parties have entered into an abbreviated adjudicative process." *Turner v. Nicholson Props., Inc.*, 80 N.C. App. 208, 211 (1986) (internal quotation marks omitted). Accordingly, "an arbitration award is ordinarily presumed to be valid," *Faison & Gillespie v. Lorant*, 187 N.C. App. 567, 572 (2007), and the general rule is that "errors of law or fact, or an erroneous decision of matters submitted to arbitration, are insufficient to invalidate an award fairly and honestly made." *Turner*, 80 N.C. App. at 21.

18.    "If the dispute is within the scope of the arbitration agreement, then the court must confirm the award unless one of the statutory grounds for vacating or modifying the award exists." *Carteret Cnty. v. United Contractors of Kinston, Inc.*, 120 N.C. App. 336, 346 (1995). However, "[b]efore the award can be vacated on the grounds that the arbitrator[] exceeded [his] authority, the record must objectively disclose that the arbitrator[] did exceed [his] authority in some respect." *G.I. Wilson Bldg. Co. v. Thorneburg Hosiery Co.*, 85 N.C. App. 684, 689 (1987).

19. With regard to the scope of the arbitrator's authority, all "claims submitted to the arbitrator may be decided by him." *Faison & Gillespie*, 187 N.C. App. at 573. In "determin[ing] whether the parties agreed to submit a particular dispute or claim to arbitration, [courts] must look at the language in the agreement, *viz.*, the arbitration clause, and ascertain whether the claims fall within its scope." *Rodgers Builders, Inc. v. McQueen*, 76 N.C. App. 16, 23-24 (1985). "In so doing, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" because "public policy in this State, like federal policy, favors arbitration." *Id.* at 24.

*Killian's and Simonini's Contentions.*

20. Movants Killian and Simonini move to vacate the Award pursuant to G.S. § 1-569.23(a)(4) on the grounds that the Arbitrator exceeded his authority. Movants contend that, under the Operating Agreements and the applicable law, the Arbitrator had the authority to award only the amounts that Respondents failed to contribute as additional capital contributions to the LLCs. Movants contend that the Arbitrator awarded Trilogy consequential or expectation damages. Movants argue that while the Award does not expressly so state it is related to expectation damages, the amount of $4,181,740 awarded by the Arbitrator must have been for Trilogy's expectation damages since it is exactly the sum of the amounts Trilogy sought for lost distributions and return of its capital contributions on the Bellmore and Pavilion projects.[8] Movants do not contend in this action that the Arbitrator's award was not reached fairly and honestly or that the Arbitrator did not have

---

[8] In its Analysis of Damages presented at the arbitration hearing, Trilogy claimed to have "net damages" from the Bellmore project of $2,695,740 and $1,486,600 from the Pavilion project.

the authority to decide the claim itself, but only that he lacked the authority to award the type of damages awarded.[9]

21.     Movants argue that the Arbitrator exceeded his authority because the arbitration clauses in the Operating Agreements do not expressly provide authority for an arbitrator to award "lost capital, lost profits, or consequential damages."[10]  Movants further contend that Section 5.1 (b) obligates Movants to make only the additional capital contribution, and does not suggest that they are responsible for any other payments to, or damages suffered by, the LLCs or any other members.  Movants argue that other provisions in the Operating Agreements, including Sections 5.4, 7.1, 8.4, and 12.2, "negate any inference that [Trilogy's] Initial Capital Contribution and Preferred Return may be a recoverable damage."[11]

22.     In support of this argument, Movants rely heavily on *FCR Greensboro, Inc. v. C&M Investments of High Point, Inc.*, 119 N.C. App. 575 (1995).  In *FCR Greensboro*, the plaintiff entered into a lease agreement with the defendant under which the defendant was to build and lease a facility to the plaintiff.  The agreement, as amended, expressly provided that the facility would be completed and ready for occupancy by June 15, 1993, and that the defendant would be liable to the plaintiff for "$750 per day as liquidated damages for 'any delay past the completion date.'"  *Id.* at 575-76.  It was undisputed that the defendant delayed commencing the construction work, and the project was not completed on time.  The defendant refused to pay the liquidated damages, and the plaintiff commenced an arbitration. The arbitrator awarded the $750 per day liquidated damages to the plaintiff not only for the

---

[9] Movants assert that "the issues that were properly within the Arbitrator's powers to determine were: (a) was there an obligation on the part of [Respondents] to make a capital contribution to the Projects LLCs; (b) was there a breach of that obligation; and (c) how much K/S LLC should have contributed to the Project LLC's as an Additional Capital Contribution."  Br. Supp. Mot. Vacate 1.
[10] *Id.*
[11] *Id.* at 8.

time period after the completion deadline, but also for the time period that the defendant delayed in starting construction. *Id.* at 576. The trial court confirmed the arbitration award. The North Carolina Court of Appeals reversed the trial court, concluding that the parties' agreement expressly provided only for liquidated damages for delay in the completion date and that the plaintiff never requested liquidated damages for the delay in beginning construction. Accordingly, the Court of Appeals held that the arbitrator "exceeded his authority by awarding upon a matter not submitted to him." *Id.* at 578.

23. In addition, Movants argue that the North Carolina Limited Liability Act[12] statutorily limits the remedy for failure to make a capital contribution to payment of that contribution. G.S. § 57C-3-30(c) provides that "[t]he liability of members, managers, directors, and executives of a limited liability company formed and existing under this Chapter shall at all times be determined solely and exclusively by this Chapter and the laws of this State." Further, G.S. § 57C-4-02(b) states that "[i]f a member does not make the required contribution of property or services, the member . . . is obligated, at the option of the limited liability company, to contribute cash equal to that portion of the value of the stated contribution that has not been made." Movants contend that these statutes prohibit the Arbitrator from awarding consequential or expectation damages, and therefore the Award was outside of his authority.

24. Movants also contend that Trilogy lacks standing to pursue the claims because any obligation Killian and Simonini owed was to the LLCs and not Trilogy, and that consequential damages were not recoverable against Killian and Simonini because they were

---

[12] The Court concludes that this proceeding was commenced by the filing of the arbitration in December of 2013. Accordingly, the Court applies the former G.S. § 57C to this case, which is G.S. § 57D-11-03(b).

guarantors only of K/S, LLC's capital contributions so that any award against them would be limited to the amounts of such contributions.

<u>*Trilogy's Contentions.*</u>

25.    Trilogy opposes the Motion to Vacate and has moved the Court for an Order confirming the Arbitrator's Award. Trilogy argues that the record does not objectively disclose that the Arbitrator exceeded his authority. The Award is unreasoned, and the Arbitrator did not explain the nature or calculation of the award of $4,181,740. Trilogy contends that "this Court could not possibly conclude that the arbitrator exceeded his authority by awarding consequential damages because there is no way of knowing whether the arbitrator awarded consequential damages at all."[13] Similarly, Movant's contention that the Award consists of damages related only to the Bellmore and Pavilion projects cannot be objectively determined from the record since Trilogy sought damages related to all four Projects.

26.    Trilogy contends that the Operating Agreements contain broad arbitration provisions covering "any dispute or controversy" that place no limitations on the Arbitrator's authority to make an award. Similarly, the AAA Commercial Arbitration Rules and Mediation Procedures do not limit the Arbitrator's authority, as Rule R-47(a), entitled "Scope of Award" provides that "[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including but not limited to, specific performance of a contract."

27.    Trilogy also asserts that even if the Arbitrator awarded Trilogy consequential or expectation damages, those damages are "permissible and routine" damages awarded for breach of contract.[14] Section 7.2(b) of the Operating Agreements expressly provides that

---

[13] Mem. Supp. Mot. Confirm 10.
[14] *Id.* at 11.

Trilogy would receive preferred distributions and a return of its capital contributions in the event that the Projects were successful. Movants breached Section 5.1(b) by failing to make the capital contributions. This led to the collapse of the Bellmore and Pavilion projects and frustrated Trilogy's expectation that it would receive distributions from the LLCs pursuant to Section 7.2(b). Had K/S, LLC made the contributions, or had Killian and Simonini complied with their personal guarantees, "the lots in all four projects could have been sold at reasonable times and at reasonable prices sufficient for Trilogy to receive distributions pursuant to Section 7.2 of the Operating Agreements."[15]

28. Trilogy argues that *FCR Greensboro, supra,* does not support the Movants' position. To the contrary, that decision highlights the type of limitation on an arbitrator's authority that is missing here. In *FCR Greensboro*, the agreement at issue expressly provided for liquidated damages only for the period of delay after the agreed completion date, and the plaintiff did not request liquidated damages for the delay in starting construction. There, the arbitrator exceeded his express authority regarding liquidated damages as provided by the agreement, and decided issues that were not submitted to him. Here, in contrast, the Operating Agreements do not limit the damages that the Arbitrator can award, and Trilogy expressly sought consequential and expectation damages in the arbitration.

29. Further, Trilogy argues that G.S. § 57C-4-02(b) does not limit the Arbitrator's authority to award consequential and expectation damages. Rather, that statute provides that "[e]xcept as provided in an operating agreement," a member's liability for failure to make a required capital contribution might be limited to the amount of the unpaid capital contribution. The Operating Agreements in this case provided that Trilogy would receive preferred distributions and return of its capital contributions, and the Arbitrator properly

---

[15] *Id.* at 12.

awarded Trilogy damages based on its expectations of receiving the distributions and return of capital.

*Review of Arbitrator's Award.*

30.     The Court's ability to review the Award in this case is severely curtailed by the parties' agreement to accept an unreasoned award from the Arbitrator.[16]  Consequently, the Court has no means of objectively determining how the Arbitrator arrived at the amount of the award.  In the arbitration, Trilogy presented evidence of preferred distributions and return of capital contributions it claims it would have received had the Movants made the required additional contribution and had the Projects been successfully completed as planned.  Trilogy sought total damages of approximately $12,000,000.  The additional capital contribution that K/S, LLC was required to make, and which Killian and Simonini guaranteed, was $7,738,835.  Ultimately, the Arbitrator awarded Trilogy $4,181,740.

31.     While it is true that the figure awarded by the Arbitrator is the sum of the expectation damages sought by Trilogy for the failure of the Bellmore and Pavilion projects, that figure also was well within the amount of the additional capital contribution that Movants concede the Arbitrator had authority to award.  The Arbitrator's authority certainly included the ability to determine, for any number of reasons including equitable considerations, that an award of the full amount of the additional capital contribution was not warranted, but that an award of a lesser amount was proper.  In *Carteret County*, the Court of Appeals reviewed an arbitrator's unreasoned award of $700,000 and addressed the plaintiff's argument that the amount awarded included consequential and damages that the arbitrator did not have authority to grant.  120 N.C. App. at 347.  The Court held:

> [P]laintiff argues the arbitration award impermissibly included consequential and punitive damages, which it contends are not recoverable. However, we

---

[16] Mem. Supp. Mot. Confirm 10; Rule 46(b) of the AAA Commercial Arbitration Rules and Mediation Procedures provides the parties with the right to request that the Arbitrator issue a reasoned award.

> need not determine whether such damages would be recoverable in this case. Because the arbitrators did not clarify their award, plaintiff's contention that the award contains impermissible consequential and punitive damages is speculation. Even if the award did contain such damages, it would not provide grounds for vacating the award. "The fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award."

*Id.* (citation omitted). The same circumstances exist in this case. Absent an explanation by the Arbitrator, the conclusion that the Award was for expectation damages, and not for the additional capital contribution, would be no more than "speculation." *Id.*

32. Even if the Arbitrator awarded Trilogy contract expectation damages, the Court is not convinced that it was beyond his authority to grant such damages. First, the arbitration clauses in the Operating Agreements gave the Arbitrator's authority over "[a]ny dispute or controversy arising out of or relating to" the Operating Agreements. Our appellate courts have held very similar arbitration clauses "to be sufficiently broad to include all claims arising out of or related to the contract or its breach." *Id.* The other provisions of the Operating Agreements relied upon by Movants do not expressly limit the Arbitrator to awarding only certain types of damages. Accordingly, the Arbitrator did not exceed the authority granted under the express terms of the Operating Agreements.

33. While Movants contend that the North Carolina Limited Liability Company Act limits a member's liability to payment of agreed upon capital contributions and prohibits recovery of consequential or expectation damages, it does not prohibit the Arbitrator from awarding such damages in this proceeding. In fact, G.S. § 1-569.21(c) provides, in pertinent part, as follows:

> [A]n arbitrator may order *any remedies* the arbitrator considers just and appropriate under the circumstances of the arbitration proceeding. The fact that a remedy could not or would not be granted by the court is not a ground for refusing to confirm an award under G.S. 1-569.22 or for vacating an award under G.S. 1-569.23" (emphasis added).

Arbitrators "are not bound to decide according to law when acting within the scope of their authority, being the chosen judges of the parties and a law unto themselves, but may award according to their notion of justice and without assigning any reason." *Bryson v. Higdon*, 222 N.C. 17, 19-20 (1942); *Carteret Cnty.*, 120 N.C. App. at 347 (citing *Bryson*, *supra*). Having agreed to resolve all disputes under the Operating Agreements by arbitration, Killian and Simonini vested the Arbitrator with broad equitable authority to fashion appropriate remedies even if a particular remedy might not be available in a court of law. *Faison & Gillespie*, 187 N.C. App. at 578 ("By submitting to arbitration, it is implied that the arbitrator has the power to order an appropriate remedy, even though the contract may be silent as to any specific or general relief the arbitrator may grant.") (citation omitted).

34. In addition, even if the Arbitrator awarded damages outside of those available under the statute, such an award amounts to no more than an error or law insufficient to vacate the Award. *Id.* ("If an arbitrator makes a mistake, either as to law or fact, it is the misfortune of the party, and there is no help for it. There is no right of appeal, and the Court has no power to revise the decisions of 'judges who are of the parties' own choosing.'") (quoting *Patton v. Garrett*, 116 N.C. 497, 504 (1895)).

35. Similarly, Movants' arguments that Trilogy lacked standing to pursue the claims because any obligation Killian and Simonini owed was to the LLCs themselves and not to Trilogy,[17] and that consequential damages were not recoverable against Killian and Simonini because they were merely guarantors only of K/S, LLC's capital contributions,

---

[17] The Court notes that this argument appears to lack merit since Section 5.1(b)(iii) of the Operating Agreements provides, in pertinent part, "This personal obligation by Killian and Simonini, jointly and severally, is for the benefit of Trilogy and may be enforced by Trilogy . . . The personal promises and guarantees in this paragraph are not for the benefit of any other third party and are not enforceable by any such party (other than Trilogy)." Accordingly, the Killian's and Simonini's guarantees were made to Trilogy, not to the LLCs.

assert errors of law. Even assuming the Arbitrator erred on those issues, it does not provide this Court with grounds for vacating the Award.

36. The Court concludes that Movants have failed to establish, and the record before this Court does not objectively disclose, that the Arbitrator exceeded his authority in making the Award. Accordingly, Killian's and Simonini's Motion to Vacate should be DENIED, and Trilogy's Motion to Confirm should be GRANTED.

THEREFORE, IT IS ORDERED, based upon the foregoing FINDINGS and CONCLUSIONS that:

37. Killian's and Simonini's Motion to Vacate Arbitration Award is DENIED.

38. Trilogy's Motion to Confirm Arbitration Award is GRANTED.

SO ORDERED, this the 13th day of November, 2015.

/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
for Complex Business Cases